Charles W. FAITHFUL, Plaintiff/Appellee,

v.

John R. GARDNER and Wife, Gwendolyn Gardner, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

June 8, 1990.

Application for Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

Andrew R. Carr, Jr., Rossie, Bethea, Carr & Phillips, Memphis, for defendants/appellants.

Hunter Lane, Jr., Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge, W.S.

Charles W. Faithful (hereafter "Plaintiff") filed suit for declaratory judgment in the Chancery Court of Shelby County, seeking the construction of a real estate sales contract (hereafter "contract") along with a declaration that he had not breached the contract and was not obligated to pay any sums of money to John R. Gardner and Gwendolyn Gardner (hereafter "Defendants"), the other parties to the contract for the sale of a subdivision lot. Both Plaintiff and Defendants filed motions for summary judgment. Following a hearing, the chancellor granted Plaintiff's motion for summary judgment while denying Defendants' motion. The chancellor further held that Defendants were not entitled to an abatement of the purchase price. The sole issue presented by this appeal is whether or not the chancellor erred in granting Plaintiff's summary judgment motion and denying Defendants' motion. We find no error and affirm.

The majority, if not all, of the facts relevant to the issue on appeal in this case are undisputed. Plaintiff was the owner of one or more lots in a commercial subdivision known as Crestview Subdivision in the Bartlett area of Shelby County. The real estate that is the subject of this litigation is known as Lot 1. A subdivision plat was prepared by Marshall Colvin, a consulting engineer of Colvin Associates, hired by plaintiff for that purpose. A copy of the plat is attached to this opinion as an appendix.

Plaintiff desired to sell Lot 1. While Jeffrey Ward, a realtor, had no written agency contract with Plaintiff, Plaintiff permitted Ward to attempt to sell the lot,

instructing him to offer the property for $85,000. Ward negotiated a contract of sale between Plaintiff and Defendants. Until the closing, Plaintiff and Defendants had never met nor had any discussion about the sale and purchase of Lot 1. The subject property was identified in the contract as "Lot 1 of the Crestview Subdivision, located at 5401 Crestview Road, as outline [sic] on Exhibit 'A' attached." The contract called for a total purchase price of $80,000. There is no mention in the contract of a price per square foot.

An examination of Lot 1 on the subdivision plat shows that all the boundaries are described as to bearings and distances. In addition, the number "42,780" appears within the boundaries of Lot 1, indicating that Lot 1 contained 42,780 square feet. All the dimensions shown on the boundaries are correct.

Prior to or at the time of the execution of the contract, Plaintiff, his agent Jeffrey Ward, and Defendants all were unaware that the square footage of Lot 1 as shown on the plat was incorrect. Furthermore, all of them were under the same impression at the time the property was transferred from Plaintiff to Defendants by warranty deed of August 31, 1988. In the warranty deed the subject property was described as follows:

Lot 1, Crestview Subdivision, as shown on plat of record in Plat Book 122, Page 71, in the Register's Office of Shelby County, Tennessee, to which plat reference is hereby made for a more particular description of said lot.

Six months after Defendants acquired title, when they sought to sell the property to a subsequent purchaser, it was discovered by survey and calculation that Lot 1 contained only 34,058 square feet, a deficiency of 20.39 percent. Defendants raise no question of fraud, bad faith, or misrepresentation in connection with this error. All parties are in agreement that the basis for the error was the miscalculation of the square footage of Lot 1 by the engineer who prepared the plat. Defendants' counter-claim was based upon the contention that they purchased the property for $1.87 per square foot, and that they overpaid Plaintiff the sum of $16,310.14.

In an appeal such as this, where we are called to rule upon the correctness of the granting of a motion for summary judgment, this Court, as well as the trial court, must review all of the evidence in a light most favorable to the nonmoving party and draw all legitimate conclusions of fact in favor of said party. *Daniels v. White Consol. Industries, Inc.,* 692 S.W.2d 422, 424 (Tenn.App.1985). Where there are no material facts in dispute, our determination is limited to whether or not the party prevailing is entitled to a judgment as a matter of law. *Id.* at 425.

## I. A SALE IN GROSS OR BY THE ACRE

While here we are speaking in terms of sale "by the acre," a term of art used in connection with discussing this legal principle, we are in reality considering the sale of a smaller unit—that of a square foot. The general law regarding whether a sale of real estate is one by the acre or in gross is best explained in 77 Am.Jur.2d *Vendor and Purchaser* § 90 (1975):

For the purpose of determining whether relief shall be granted upon the ground of mistake as to the quantity of the land which is the subject of a contract of sale, contracts for the sale of land fall into two general classes: (1) where the sale is of a specific quantity, which is usually denominated a sale by the acre, and (2) where the sale is of a specific tract by name or description, which is usually called a sale in gross. It is firmly settled that the rights and liabilities of the parties to a sale of real estate by the acre materially differ from those arising out of a sale by the tract (in gross).

A contract of sale by the acre is one wherein a specified quantity is material. Under such a contract the purchaser does not take the risk of any deficiency, and the vendor does not take the risk of any excess. A contract of sale by the tract or in gross is one wherein boundaries are specified, but quantity is not

specified, or if specified, the existence of the exact quantity specified is not material; each party takes the risk of the actual quantity varying to some extent from what he expects it to be. Such a sale is sometimes termed a contract of hazard. Where the contract specifies a quantity and also a tract, the contract is one by the acre if the specified quantity is emphasized by the parties and is essential. Difficulties arise from contracts in which the elements of the two types mentioned are mixed, that is, where land within described boundaries is referred to as containing a certain quantity of land, the price being expressed in a lump sum or a specified rate per acre or other unit, it being doubtful whether the emphasis of the contract is upon a sale of the land within the boundaries described or upon the quantity, and under what circumstances a contract of this kind should be classified as a sale by the tract, as distinguished from a sale by the acre, and vice versa.

As a general proposition, relief from a mistake as to the quantity of land sold and purchased is more readily obtainable where the sale is by the acre than where it is in gross. Even though in the contract the land is designated by boundaries or name, nevertheless, where the sale is deemed to be by the acre, a deficiency or excess in acreage may justify an adjustment of the purchase price. Where land has been sold by the acre, the vendee in some cases has been granted relief for a mistake as to quantity, no matter how small the deficiency was. On the other hand, even though there is a reference to the quantity of the land or its area, where the sale is deemed to be by the tract (or entire body or in gross), a deficiency or excess in acreage will not, as a general proposition, justify an adjustment of the purchase price, at least in the absence of actual fraud or warranty of quantity.

■ In determining whether a sale is in gross or by the acre, the intention of the parties controls and thus must be given effect. 77 Am.Jur.2d *Vendor and Purchaser* § 93 (1975). The contract of sale, and not the deed, determines whether the sale is by the acre or in gross. *Myers v. Lindsay,* 73 Tenn. 331 (1880); *Seward & Scales v. Mitchell,* 41 Tenn. 87 (1860); *Rich v. Scales,* 116 Tenn. 57, 91 S.W. 50 (1905); 18 Tenn.Jur. *Vendor and Purchaser* § 27 (1985).

■ After preliminary negotiations and oral conversations are concluded and a contract is reduced to writing that is clear and unambiguous, there is a conclusive presumption that the parties have reduced their entire agreement to writing, and that any parol agreement is merged in the written contract. Testimony of prior or contemporaneous conversations for the purpose of altering, contradicting, or varying the terms of the written instrument are incompetent and inadmissible. *Starnes v. First American Nat. Bank of Jackson,* 723 S.W.2d 113 (Tenn.App.1986); *Brown v. Brown,* 45 Tenn.App. 78, 320 S.W.2d 721 (1958). However, where there is any ambiguity in the contract as to whether or not the sale is by the acre or in gross, extrinsic evidence has been held admissible as an aid in ascertaining the true intent of the parties. *Caughron v. Stinespring,* 132 Tenn. 636, 179 S.W. 152 (1915); 77 Am.Jur.2d *Vendor and Purchaser* § 93 (1975).

■ In addition, there are several factors that have been recognized as having a bearing on the court's determination of whether or not a sale of real estate is by the acre or in gross. One of the most important facts to be considered is the way in which the purchase price is stated in the contract. A contract in which the price is expressed as a lump sum as opposed to a price per acre (or per unit) tends to show a sale in gross. *Acuff v. Allen,* 28 Tenn. App. 451, 191 S.W.2d 196 (1945); Anno., 1 A.L.R.2d 1 § 13 (1948); 77 Am.Jur.2d *Vendor and Purchaser* § 94 (1975). Another factor to be considered in determining whether the sale is in gross or by the unit is the way in which the quantity of land is specified in the contract. As noted in 77 Am.Jur.2d *Vendor and Purchaser* § 99 (1975):

Where land is described by certain monuments, lines, and courses, and also as containing a certain quantity, the words expressing the quantity are not ordinarily to be considered as a covenant that the land contains such quantity, but are to be taken as merely descriptive. Thus, a sale in gross will be inferred where the contract particularly designates the property by name, by courses and distances; by metes and bounds, the most common form of description; or by reference to a plat, plan, blueprint, government survey, or prior deed, patent, or grant.

See also Anno., 1 A.L.R.2d 1 § 17 (1948). A final factor to indicate the type of sale is whether or not the contract provides for a survey or the parties subsequently agree to a survey. 77 Am.Jur.2d *Vendor and Purchaser* § 101 (1975); Anno., 1 A.L.R.2d 1 § 19 (1948).

█ The contract in the case at bar stated the purchase price as a lump sum of $80,000. It identified the property to be sold as "Lot 1 of the Crestview Subdivision" with a reference to a subdivision plat. There is no reference in the contract to a price per unit. The quantity of land is not specified on the face of the contract. The plat referred to identifies Lot 1. Its boundaries are described by courses and distances. While Lot 1 contains the number "42,780" written on the plat, it is clear that this number is merely descriptive rather than material.

The record also reflects that both Plaintiff and Defendant John Gardner are experienced real estate men, that Gardner visited the subdivision and observed the property approximately one week prior to entering into the contract, and that he had a copy of the plat in his possession prior to signing the contract. Under all the attendant circumstances, we are of the opinion that the contract as entered into by and between the parties is clear and unambiguous and reflects the intentions of the parties to enter into a sale and purchase in gross.

The chancellor's decree reflects that he considered the depositions of Plaintiff, Defendant John Gardner, and Plaintiff's agent Jeffrey Ward in granting summary judgment. In light of our holding that the intentions of the parties are clearly expressed by the Contract, the consideration of much of the evidence contained in these depositions by the chancellor was irrelevant and inadmissible. However, the chancellor did reach the correct result.

In *Smith v. Grizzard*, 149 Tenn. 207, 212, 259 S.W. 537, 538 (1924) our Supreme Court stated the rule applicable here in the following manner:

"[T]he rule is that, where it clearly appears that the sale was made in gross, and not by the acre, and the purchaser not only had every opportunity afforded him to ascertain and satisfy himself definitely as to the extent and location and quantity and boundaries of the lands purchased, but actually did so, going personally upon the property and viewing it from every angle, he has no right to recover for a deficiency, unless actual fraud is proven, or the circumstances and the deficiency are such as to raise a presumption of fraud. The expression frequently used in this connection, "so great asa to shock the conscience of the court," occurs always in direct association with the suggestion of a presumption of fraud. In other words, relief will be granted where a deficiency is so great as to shock the conscience of the court because a presumption of fraud must thereupon arise."

█ Defendants conceded in their brief that there was no intention of fraud, misrepresentation, or bad faith on the part of Plaintiff. We find that under the case law of this state, while not playing the game of percentages, the 20.39 percent deficiency in the square footage of Lot 1 is "not so great as to shock the conscience of this Court." Thus, there is no presumption of fraud.

The decree of the chancellor granting summary judgment for the Plaintiff and denying summary judgment on behalf of Defendants is affirmed. Costs in this cause are taxed to Defendants, for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.

APPENDIX A