**BOOK–MART OF FLORIDA, INC., Plaintiff–Appellee,**

v.

**NATIONAL BOOK WAREHOUSE, INC., Defendant–Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Oct. 19, 1995.

Permission to Appeal Denied by Supreme Court March 11, 1996.

John B. Waters, III, Knoxville, for Plaintiff–Appellee.

F. Dulin Kelly, Knoxville, for Defendant–Appellant.

## OPINION

FRANKS, Judge.

In this contract action, the Trial Judge awarded plaintiff damages and injunctive relief. Defendant has appealed.

The genesis of this dispute is when Dean Winegardner, an employee of National Book Warehouse (NBW), left its employment in order to start his own book business, Book–Mart. Winegardner and NBW President Paul Cowell continued to do business together for a time, with Book–Mart purchasing much of its inventory from NBW. However, when their companies began to compete, they tried to resolve the friction being created by allegedly entering into several oral and written agreements.

According to plaintiff, the original oral agreement encompassed several points: Book–Mart would sell NBW all of its temporary store inventory and related assets, NBW would deliver inventory to Book–Mart for certain store locations, NBW would assign or sublet certain proposed permanent stores to Book–Mart, and NBW would give Book–Mart a right of first refusal over stores it planned to open in Florida. According to Defendant NBW, the purchase of Book–Mart's temporary assets was undertaken with the understanding that Book–Mart would thereafter stay out of the temporary book sales business and would confine its operations to the state of Florida.

Two agreements were reduced to writing: a March 9, 1990 contract for the purchase of Book–Mart's temporary store inventory and an August 27, 1990 agreement regarding the right of first refusal over Florida stores.

During 1990–3, NBW gave Book–Mart the contracted for right of first refusal over new Florida stores. This practice continued after NBW President Cowell left the company and after Book–Mart began to open other stores outside of Florida. But in 1993, NBW opened a store on Sanibel Island without giving Book–Mart a right of first refusal. Book–Mart filed suit to enforce the agreement. NBW denied that the Plaintiff was entitled to relief, sought to have the agreement declared void, and sought damages against Plaintiff.

The Trial Court determined that the parties made only the agreements reflected in the written documents. The court found that the parties did not agree that Book–Mart would be limited to doing business in Florida and there was no over-reaching, unfairness,

lack of meeting of the minds, mistake, or failure of consideration. The court determined that Book–Mart had intended to expand its business, had been successful with the temporary book sale format, and would not have agreed to limiting its business to the state of Florida. Further, NBW President Cowell, an experienced businessman, would have insisted that such a restriction be included in the signed agreements, had it been intended. On this basis the court ordered the enforcement of the right of first refusal option, damages in the form of lost profits from the NBW Florida stores opened in violation of the agreement, and attorneys fees. The court later amended its order to state that the injunction applied to both permanent and temporary NBW sales in Florida.

■ At the outset of our analysis, we note that NBW has filed a motion to consider post judgment facts, i.e., the filing of two new lawsuits by NBW against Book–Mart, seeking a declaratory judgment and charging breach of contract. NBW argues that the new suits are the type of post-judgment proceeding that should be considered in order for the Court to "adequately examine the scope, indefiniteness, and uncertainty inherent to the agreement which the Chancery Court has enforced." Under Rules of Appellate Procedure, Rule 14, an appellate court has discretion to consider facts occurring after judgment which are unrelated to the merits or not genuinely disputed.

Appellate consideration of a new suit filed between the parties was addressed by the Supreme Court in *State, ex rel. SCA Chem., etc. v. Konigsberg,* 636 S.W.2d 430, 432 (Tenn.1982), where the Court refused to consider such facts, stating that it was "inappropriate to consider upon this appeal matters pertaining to subsequent litigation now pending in the trial court...." In this case, appellant's allegations have not been tested in the Trial Court, and are disputed by the appellee. Accordingly, these allegations are not capable of "ready demonstration" as re-

quired by Rule 14 and have not been "established at trial," as recommended by the Advisory Commission. Moreover, the facts are outside the scope of Rule 14 consideration because the allegations go to the merits of the case. *See Town of Dandridge v. Patterson,* 827 S.W.2d 797 (Tenn.App.1991). The motion is overruled.

The Trial Court's interpretation of the agreement are conclusions of law and reviewed *de novo* by this Court. T.R.A.P.Rule 13(d). *Hill v. Tennessee Rural Health Imp. Ass'n,* 882 S.W.2d 801 (Tenn.App.1994).

■ When the "language of a contract is plain and unambiguous it is the duty of the Court to interpret and enforce it as written...." *Dunn v. United Sierra Corp.,* 612 S.W.2d 470, 473 (Tenn.Ct.App.1980). Appellant argues the contract should not be enforced because of uncertainty. Uncertainty is found when a court can not perceive the respective obligations of the parties for enforcement. *Higgins v. Oil, Chem. and Atomic Workers' Int'l Union,* 811 S.W.2d 875, 880 (Tenn.1991). In this case the subject matter is identified, the essential commitment and arrangement are explained, and the notice required for the right of first refusal and the time frame for acceptance is specified. Uncertainty [1] is not a basis to void this contract.

■ The bill of sale for Book–Mart's temporary inventory is a clear, seemingly self-contained document. There is consideration and the terms state the price and items being sold. There are no references to other contracts, vague representations, or conflicting terms. The contract for the right of first refusal is similarly straightforward. It explains the arrangement between Book–Mart and NBW, specifies the amount of notice to be given for the right of refusal, and includes the time frame for acceptance. It both recites an acknowledgement of consideration and extols the benefits of establishing a relationship between the two parties. We agree with the Trial Judge that the contract did not

---

1. Bookmart charges the issue of uncertainty was not raised in the Trial Court. However, it does appear to have been raised in appellant's answer which set forth "the agreement is vague and ambiguous as drafted and requires information

beyond the four corners in order to be comprehensible." While the term indefiniteness is not used, we conclude the issue was sufficiently raised.

encompass terms other than those in the written documents. T.R.A.P.Rule 13(d).

Next, NBW insists the contract does not represent the full understanding between the parties, contending that the consideration for the advantageous purchase price of the books and for the right of first refusal was Book–Mart's agreement to restrict its business to Florida. However, the parol evidence rule excludes testimony of prior conversations for the purpose of altering, contradicting, or varying the terms of a clear and unambiguous written agreement. *Faithful v. Gardner,* 799 S.W.2d 232 (Tenn. App.1990). The contract contains a merger clause reciting that the agreement between the parties has been included in the agreement. Moreover, the agreement spells out its essential terms and consideration. The terms are clear and do not contradict each other. Nor do they refer to other agreements or terms. Further evidence that the agreement contained only the terms stated is found from the parties performance according to the terms of the contract for several years. *See Minor v. Minor,* 863 S.W.2d 51 (Tenn.App.1993); 17 Am.Jur.2d Contracts § 193 (1991).

We affirm the Trial Court's interpretation of the terms of the contract.

We also affirm the Trial Court's determination of the scope of the injunction. The language of the contract states that Book–Mart is entitled to a right of first refusal over *"any* new location" chosen as a "retail facilit[y]". The contract does not make a distinction between the type of stores. Given that both parties were in the temporary and permanent sales business, it is reasonable to conclude that such a distinction would have been stated in the contract. Therefore, applying the plain meaning of the contract language, the contract must be enforced as written and the injunction applies to both permanent and temporary stores opened by NBW.

The trial court did not directly rule on the issue of the duration of the right of first refusal, but did make the injunction permanent. NBW did not raise this issue at the trial level, and we decline to consider it on appeal. *Sparks v. Metro. Gov. of Nashville and Davidson Co.,* 771 S.W.2d 430 (Tenn.Ct.App.1989), other than note that absence of a term indicating the duration of a contract is not fatal, *Apco Amusement Co., Inc. v. Wilkins Family Restaurants of America,* 673 S.W.2d 523, 528 (Tenn.Ct.App. 1984) and in the new suit filed by NBW since this judgment, a declaratory judgment on this issue is sought.

The other defenses raised by NBW are without merit, i.e., failure of consideration, mutual mistake, and reasonableness of the right of first refusal as a restriction of trade.

Appellant argues failure of consideration because Book–Mart was not restricted to Florida. However, this restriction was not expressed in the contract agreement, and the contract contains other grounds of consideration, specifically, NBW receives the benefit of "entering into a relationship which can inure to the benefit of both parties." While this relationship may not be a great benefit to receive for the detriment of giving Book–Mart the right of first refusal over new Florida stores, consideration is not required to be advantageous or profitable. *Dark Tobacco Grower's Co-op. Ass'n v. Mason,* 150 Tenn. 228, 263 S.W. 60 (1924).

Defendant argues the contract should be voided on the grounds of mutual mistake, and while it points out that many essential terms of the agreement were disputed at trial, a dispute is not an innocent mistake caused by outside forces. The argument is without merit. *See Atkins v. Kirkpatrick,* 823 S.W.2d 547 (Tenn.Ct.App.1991); *Loveday v. Cate,* 854 S.W.2d 877 (Tenn.App.1992).

Finally, appellant insists that the right of first refusal constitutes an unreasonable covenant not to compete, and draws an analogy to *Dabora Inc. v. Kline,* 884 S.W.2d 475 (Tenn.Ct.App.1994) (employer/employee agreement restricting that later competition must not be overly broad in geographic scope or duration).

The agreement in this case is not analogous to an employee covenant not to compete. This case involves two business entities with equal bargaining power unlike an

employer and employee relationship. But, assuming *arguendo* that a covenant not to compete is analogous, the agreement in this case is reasonable in scope. NBW is a nation-wide chain and the agreement only restricts its trade in Florida, and while the duration of the agreement has not been resolved, the agreement does not prevent NBW from transacting its business generally.

For the foregoing reasons we affirm the Trial Court and remand at Appellant's cost.

GODDARD, P.J.(E.S.), and SUSANO, J., concur.