**ATLANTIC POOLS AND SPAS, INC.**

v.

**BELLSOUTH ADVERTISING AND PUBLISHING CORPORATION, et al.**

No. 1–98–0074.

United States District Court, M.D. Tennessee, Columbia Division.

April 12, 1999.

Charles Timothy Tisher, Mark A. Free, Matthews, Tisher & Free, Columbia, TN, for Atlantic Pools and Spas, Inc. pltfs.

Steven E. Anderson, Jonathan C. Stewart, Bass, Berry & Sims, Nashville, TN, for BellSouth Advertising and Publishing Corporation, L M Berry & Company, defts.

## MEMORANDUM

HIGGINS, District Judge.

The Court has before it the defendants' motion (filed December 9, 1998; Docket Entry No. 6) for summary judgment; its memorandum (Docket Entry No. 7) in support; and the plaintiff's memorandum (filed January 19, 1999; Docket Entry No. 13) in opposition to the defendants' motion for summary judgment.

The Court has subject matter jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. § 1332.

For the reasons discussed below, the defendants' motion for summary judgment shall be granted.

### I.

This case involves a written contract between the plaintiff, Atlantic Pools and Spas, Inc., and the defendants, BellSouth Advertising And Publishing Corporation and L.M. Berry & Company, for advertising in the yellow pages of several Middle Tennessee telephone directories. BellSouth publishes telephone directories, including the yellow pages, and sells directory advertising. Berry is the agent authorized by BellSouth to sell directory advertising in Tennessee.

In April of 1993, Stu Tinney, one of the owners of Atlantic, entered into a contract or a "Directory Advertising Order" with BellSouth through its agent, Berry, for advertising space in certain yellow pages directories. The directories in which the advertisement was to be placed included directories covering the areas of Columbia, Lawrenceburg, Hohenwald, Lewisburg, Centerville, Pulaski, and Franklin, Tennessee.

The DAO provided that the advertisements would automatically renew each year unless written notice was given by either party. Even though the automatic

renewal provision was in the DAO, a Berry representative would call Mr. Tinney, pursuant to company policy, before printing the advertisements each year to inquire whether Atlantic wished to continue advertising in the relevant directory and to discuss any changes. Occasionally, the Berry representative would also fax a "Directory Advertising Printing Order" to Atlantic, which contained a copy of the advertisement allowing for changes if necessary and a provision acknowledging that the DAPO was subject to the terms and conditions of the "associated" DAO.[1] Mr. Tinney signed a DAPO on at least one occasion.

Although Atlantic's advertisements were printed for some years in the relevant yellow pages directories without an problems, Altantic's advertisements were mistakenly omitted from the Pulaski, Hohenwald, and Lewisburg directories for 1996–97 and 1997–98, and the Columbia directory for 1997–98. Apparently, Atlantic's advertisements were omitted because BellSouth and Berry had associated Atlantic's account with another account which was allegedly delinquent in its payment for advertisements. Because of this association, Atlantic's advertisement was omitted from the directories at issue.

The reason BellSouth and Berry associated Atlantic with another company is because when Atlantic first opened for business in Columbia in 1988, it was known as Atlantis Pools, not Atlantic Pools. Atlantis Pools consisted of two corporations: Atlantis—Nashville and Atlantis—Columbia, which were both owned by majority shareholders, Henry Coradino and Richard Sgambati. Because of the overlapping ownership, BellSouth and Berry associated the two accounts for accounting purposes. However, in December of 1990, Mr. and Mrs. Tinney bought Atlantis—Columbia and changed the name of the business to Atlantic Pools. Mr. Tinney called Berry to have the name changed on the company's advertisements but did not inform Berry of the change in ownership.

In April of 1993, Atlantic entered into the DAO at issue. Although the DAO showed that Atlantic had its own account number and was to be billed at its Columbia address, the DAO stated that the account was to be handled at the same phone number as Atlantis—Nashville. Apparently, this number was not corrected by Mr. Tinney when he signed the DAO. In 1995 or 1996, Atlantis—Nashville allegedly failed to pay for advertising and its account was listed as a "non-pay account." Pursuant to BellSouth policy, Atlantic was also listed as a non-pay account since it was associated with Atlantis—Nashville, and therefore, Atlantic's advertisements were omitted from the directories at issue.

The plaintiff filed this action against the defendant in the Chancery Court of Maury County, Tennessee, on May 8, 1998, alleging breach of contract and negligence. On June 15, 1998, the defendants filed a notice of removal (Docket Entry No. 1) of this case to federal court on the basis of diversity. The defendants. move for summary judgment on the grounds that the provisions of the DAO limit the liability of the defendants in this case and is thus dispositive of the plaintiff's claims.

## II.

As provided by Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202, 211 (1986). In its consideration of the evidence, the Court must view all facts and inferences to be drawn therefrom in the light most favorable to the non-moving party. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1349 (6th Cir.1991). In order to prevail on a summary judgment motion,

---

**1.** A copy of the DAO was not attached to the  DAPO or referenced with any specificity.

the moving party bears the burden of proving the absence of a genuine issue of material fact concerning an essential element of the opposing party's action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986); *Davidson & Jones Dev. Co.*, 921 F.2d at 1349; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). An issue of material fact is one which, under the substantive law governing the issue, might affect the outcome of the suit. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

In addition, a dispute about the material fact must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." [2] *Id.* at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211–12. Since the preponderance of the evidence standard is used in this determination, more than a mere scintilla of evidence in support of the plaintiff's position is required. *Id.* at 252, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

Once a motion for summary judgment has been made, "the non-moving party bears the responsibility to demonstrate that summary judgment is inappropriate under Rule 56(e)." *Davidson & Jones Dev. Co.*, 921 F.2d at 1349. The non-moving party may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claims and establishing the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, 91 L.Ed.2d at 274; *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989). While the disputed issue does not have to be resolved conclusively in favor of the non-moving party to defeat summary judgment, "sufficient evidence supporting the claimed factual dispute" must be shown, thereby requiring resolution of the parties' differing versions of the truth by a jury or judge. *Liberty Lobby*, 477 U.S. at 249, 106

S.Ct. at 2510, 91 L.Ed.2d at 212; *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569, 592 (1968).

## III.

The parties agree that Tennessee contract law governs the DAO in this case. The DAO states in pertinent part:

**4. SUBSEQUENT DIRECTORIES.** Your advertising will be published in each issue of the directory subsequent to that referred to on this order until canceled in writing by either party 15 days prior to the close date for acceptance of advertising. You will be notified in writing in advance of any change in the advertising rates for such subsequent issues. You will be deemed to have accepted the new rate, if we have not received written cancellation within 15 days of such notice.

.    .    .    .    .

**8. LIMITATION OF LIABILITY.** You understand and agree that (1) alternative competing advertising media are available to you; (2) occasional errors or omissions in advertising may occur in our directories and cannot be corrected until the next issue; (3) any potential harm from an error or omission is speculative in nature; we cannot offer advertising at rates which reflect its value to each advertiser; and we assume no responsibility other than that contained in these terms and conditions.

THEREFORE, FOR MUTUAL CONSIDERATION, YOU AGREE THAT ANY LIABILITY WHICH WE MAY HAVE DUE TO ERRORS OR OMISSIONS IN YOU ADVERTISING SHALL NOT EXCEED THE AMOUNT OF CHARGES FOR THE ADVERTISING IN WHICH THE ERROR OR OMISSION OCCURRED. OUR LIABILITY SHALL BE DISCHARGED BY ABATEMENT OF

---

**2.** The Supreme Court further explained that a court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512, 91 L.Ed.2d at 214.

THE ADVERTISING CHARGES FOR ANY COMPLETE OMISSION, OR BY REDUCTION OF YOUR CHARGES FOR ANY ERROR IN PROPORTION TO ANY REDUCTION OF THE VALUE OF THE ADVERTISING DUE TO THE ERROR.

THIS LIMITATION OF LIABILITY APPLIES TO US, ANY AUTHORIZED AGENT, .... IT APPLIES TO CLAIMS IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE AND TO ANY LOSS OF BUSINESS PROFITS OR ADDITIONAL ADVERTISING COSTS INCURRED. IT ALSO APPLIES TO ANY SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ....

Tinney deposition (filed December 9, 1998; Docket Entry No. 10) attachment at exhibit 1.

The defendants argue that "BAPCO and Berry's liability for these omissions is limited by the terms of the unambiguous, written agreement between the parties," and therefore, they are "only liable to Atlantic Pools to the extent it has paid for advertising which it did not receive." Defendants' memorandum (Docket Entry No. 7) at 6–7. The plaintiff, on the other hand, assumes that the terms of the DAO are ambiguous and thus subject to varying interpretation. However, the Court does not find anything in the provisions of the DAO to be ambiguous.

The plaintiff further attempts to argue that the provision limiting liability is subject to interpretation because the DAO is an adhesion contract. The plaintiff argues that "such a clause could not be inferred or assumed and should not be enforced in a case such as the case at bar where Plaintiff has only one means of filling its important need of Yellow Pages Advertising;" yet, the plaintiff concedes that "the majority of cases in Tennessee have consistently upheld the validity of similar limitation of liability clauses contained in contracts between businesses and Yellow Page Directories." [3] Plaintiff's memorandum (Docket Entry No. 13) at 5–6.

■ First, the Court agrees with the statement in the DAO that "alternative competing advertising media are available." Tinney deposition (Docket Entry No. 10) attachment at exhibit 1. In considering almost the same exact issue as in the instant case, the *Smith* court also noted that "advertising media is available in many different ways. We now have advertising by radio, by television, by newspaper, by United States mail and many[,] many other classes of ordinary advertising." *Smith*, 364 S.W.2d at 958.[4] Therefore, the court refused to find that there was an inordinate disparity in bargaining power between the parties and found that the limiting provision was not against public policy. *Id.* at 957, 959. Accordingly, this Court also finds that simply because the plaintiff characterizes his "need of Yellow Pages Advertising" as "important," such a characterization does not make the DAO a contract of adhesion.

■ Second, the plaintiff attempts to distinguish the Tennessee cases on the grounds that those cases involved written contracts covering the year in which the advertising omission or error occurred, while the instant case involves a contract signed in 1993 but omissions which occurred 3 to 4 years later. The Court finds such a difference to be immaterial because the DAO clearly stated that it would cover

---

**3.** These cases include *Affiliated Professional Services v. South Central Bell Telephone Co.,* 606 S.W.2d 671 (Tenn.1980); *Joy Floral Co. v. South Central Bell Telephone Co.,* 563 S.W.2d 190 (Tenn.Ct.App.1977); *Smith v. Southern Bell Telephone and Telegraph Co.,* 51 Tenn. App. 146, 364 S.W.2d 952 (1962). In *Affiliated,* the Tennessee Supreme Court also noted that "almost every appellate court which has considered the frequently litigated question presented in the present case has sustained the provisions of the contract limiting liability of the telephone company and its soliciting agent." *Affiliated,* 606 S.W.2d at 672.

**4.** It is noteworthy that this case was decided in 1962. In 1996–1998, the years at issue in the present case, even more avenues of advertising existed for the plaintiff.

subsequent directories unless cancellation was received in writing. Furthermore, the DAPOs which were faxed in advance of advertising each year indicated that "this printing order is subject to the Terms & Conditions of the associated Directory Advertising Order." Tinney deposition (Docket Entry No. 10) attachment at exhibit 2. Therefore, the plaintiff knew that it was still bound by the DAO.

The plaintiff also argues that because the contents, size, and price of the advertisement often changed from year to year, "each subsequent year's advertising was clearly not a renewal of the 1993 'DAO' but was a separate implied-in-fact contract based upon the parties previous course of dealing." Plaintiff's memorandum (Docket Entry No. 13) at 7. The only case that the plaintiff cites in support of its position is *W.E. Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342 (Tenn.Ct.App.1994). First, the Court notes that *Scandlyn* involved a suit by lot owners in a resort development against the corporations which owned and managed the resort and did not have anything to do with the issues present in the instant case. Second, the Court notes that, even the *Scandlyn* court found that

> an express contract existed between plaintiffs and defendants with respect to the payment of maintenance fees in exchange for utilities and services. In this state, no right exists in law or equity which allows a party to abandon an express contract and seek recovery in quantum meruit or under an implied contract theory.

*Scandlyn*, 895 S.W.2d at 349. Likewise, in the instant case, it is undisputed that an express contract exists between the parties, i.e., the DAO, and there is no reason to allow the plaintiff to abandon it. In coming to this conclusion, the Court has considered the language in the DAO: "You will be notified in writing in advance of any change in the advertising rates for such subsequent issues. You will be deemed to have accepted the new rate, if we have not received written cancellation within 15 days of such notice." Tinney deposition (Docket Entry No. 10) attachment at exhibit 1. Based on such language, the Court finds that the plaintiff was on notice that the price of the advertisement might change and probably would to account for inflation and other changes like a modification to the advertisement. The Court finds that the parties' course of dealing after 1993 is consistent with the terms of the DAO.

■ The plaintiff also argues in support of its position that:

> the course of dealing between Atlantic Pools and the Defendants [after 1993] was not ambiguous and differing inferences could not be drawn. Each year the essential terms of the implied-in-fact contract between the parties were specifically addressed and, in fact, each year a separate contract was fully performed until Defendants negligently omitted Atlantic Pools' advertising.

Plaintiff's memorandum (Docket Entry No. 13) at 8. However, as to the parties' dealings after the DAO was signed, the Court notes that Mr. Tinney testified that "the pattern wasn't very consistent. I can't remember from year to year." Tinney deposition (Docket Entry No. 10) at 19. He further testified that when he was contacted by the defendants after 1993 as to subsequent directories, they "[n]ever discussed terms, never." *Id.* at 65. The Court agrees with the defendants that such actions constituted an ambiguous course of dealing and cannot constitute an implied contract.[5] *See Jamestowne On*

---

5. The Court also agrees with the defendants that:

> Atlantic Pools seeks in this litigation to have it both ways. With regard to the annual renewal, Atlantic Pools asks this Court to recognize the Defendants' responsibility under the DAO to automatically renew its advertisements in subsequent directories.

> With regard to liability, however, Atlantic Pools asks this Court to *ignore* the DAO's strict limitation on the Defendants' liability, and find the parties' telephone conversations constituted an implied contract which supersedes the written agreement.

Defendants' memorandum (Docket Entry No. 7) at 9.

*Signal, Inc. v. First Fed. Sav. & Loan Ass'n,* 807 S.W.2d 559 (Tenn.Ct.App.1990) ("The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn.").

For the above reasons, the Court concludes that the defendants' motion for summary judgment on the plaintiff's claim of breach of contract should be granted. The Court also agrees with the defendants that the plaintiff's claim of negligence must fail as "this action is clearly one that sounds in contract and not in tort." Defendants' memorandum (Docket Entry No. 7) at n. 3. Even if there was any doubt about the characterization of this action, the limitation of liability in the DAO specifically states that "THIS LIMITATION OF LIABILITY ... APPLIES TO CLAIMS IN CONTRACT, TORT, STRICT LIABILITY OR OTHERWISE ...." Tinney deposition (Docket Entry No. 10) attachment at exhibit 1. "When the 'language of a contract is plain and unambiguous it is the duty of the Court to interpret and enforce it as written.'" *Book–Mart of Florida, Inc. v. Nat'l Book Warehouse, Inc.,* 917 S.W.2d 691, 693 (Tenn.Ct.App.1995) (quoting *Dunn v. United Sierra Corp.,* 612 S.W.2d 470, 473 (Tenn.Ct.App.1980)). Moreover, it is clear that in *Smith* the plaintiff also brought a claim of negligence against the phone company, which was rejected by the court. *See Smith,* 364 S.W.2d at 953. Accordingly, the defendants' motion for summary judgment on the plaintiff's claim of negligence shall be granted, and this case shall be dismissed with prejudice.[6]

An appropriate order will be entered.

In accordance with the memorandum contemporaneously entered, the defendants' motion (filed December 9, 1998; Docket Entry No. 6) for summary judgment is granted. Accordingly, this case is dismissed with prejudice.

Entry of this order constitutes the judgment in this action.

It is so ORDERED.

---

**6.** The Court notes that Altantic has apparently presented no evidence that it paid for the advertising that was omitted in the various directories, and thus, no such recovery, as provided by the DAO, shall be had by the plaintiff.