# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 16, 2011 Session

## IN RE: ESTATE OF GEORGE H. STEIL, II

**Appeal from the Probate Court for Franklin County**
**No. P100109     Thomas C. Faris, Judge**

**No. M2011-00701-COA-R3-CV - Filed May 16, 2012**

The only issue in this case is whether a divorced wife was entitled to continue to receive alimony after the untimely death of her former husband. The wife argued that the support award was in the nature of alimony *in solido*, which is for a fixed total amount that does not abate upon the death of the obligor. She relies upon an Agreed Interim Order that provided that the husband would pay the wife "spousal support in the amount of $500 per month for a period of three years. . . ." The executrix of her former husband's estate contended that the terms of the Agreed Interim Order were irrelevant, because the order was superseded by the Marital Dissolution Agreement (MDA), which was incorporated into the final decree of divorce. The MDA included the $500 per month alimony provision, but provided that the husband's alimony obligation would end if the wife remarried, and it did not mention the three year period or any other time limitation. The executrix accordingly argued that the MDA award was in the nature of alimony *in futuro*, which abates upon the death of the obligor by operation of law. *See* Tenn. Code Ann. § 36-5-121(f)(1). The trial court found that the omission of the three year period from the MDA was an inadvertent oversight, that the parties intended the alimony award to be *in solido*, and that the wife was accordingly entitled to receive support from her former husband's estate. We reverse, because the MDA establishes the award and provided for alimony *in futuro*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Reversed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Bradley Joseph Eldridge-Smith, Tullahoma, Tennessee, for the appellant, Christine Ann Burns.

Jerre Michael Hood, Winchester, Tennessee, for the appellee, Vicki Lee Steil.

# OPINION

## I. BACKGROUND

George H. Steil, II (Husband) and Vicki Lee Steil (Wife) were married on July 7, 2002. After several years of marriage, Wife filed a complaint for divorce in the Chancery Court of Franklin County. On June 26, 2009, the trial court entered an Agreed Interim Order, which included provisions for temporary sharing of the marital home by Husband and Wife and for the division of certain marital property. It also declared that "the Defendant [Husband] shall pay to the Plaintiff [Wife] spousal support in the amount of $500.00 per month for a period of three years, beginning on July 1, 2009 and ending on July 1, 2012."

The parties subsequently entered into a Marital Dissolution Agreement (MDA) which contained a spousal support provision that read in its entirety, "[t]he Husband will pay to the wife the sum of $500 per month. This alimony shall continue monthly unless the wife shall remarry and in that event then the alimony payments shall stop." No mention was made of a three year period or of a starting or stopping date. The trial court conducted the divorce hearing on August 21, 2009, and entered a final decree that granted the divorce to both parties on the ground of irreconcilable differences. The MDA was incorporated into the decree by reference.

Husband's support payments under the divorce decree continued until he passed away, on or about August 28, 2010. Husband's daughter was appointed as executrix of his estate. On December 17, 2010, Wife filed a claim against Husband's estate in the Probate Division of the General Sessions Court of Franklin County for "[b]alance owing of alimony in solido as per attached Agreed Interim Order." She asked the court to award her $11,000, representing 22 months of unpaid alimony under the interim order. The executrix filed an objection to the claim, "grounded in the averment that the alimony referenced was not alimony *in solido* and therefore said obligation terminated with the death of decedent."

The Probate Court conducted a hearing on Wife's claim on January 18, 2011, and subsequently entered an order allowing the claim. The order stated that the parties had intended the spousal award to be alimony *in solido* and that the omission from the MDA of any mention of the three year period set out in the interim order was an oversight, a mere drafting error. The court further explained that it reached its determination "[b]ased upon the testimony of Joe Ford, who was the divorce attorney for the claimant, and a review of his file and the exhibits tendered to the Court." The executrix subsequently filed a motion for a new hearing. The court denied the motion. This appeal followed.

## II. APPLICABLE LEGAL PRINCIPLES

A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *Pylant v. Spivey*, 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003)(citing *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993)). When an MDA is incorporated into a divorce decree, it is said to lose its contractual nature and to become a judgment of the court. *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). However, it is still construed in the same manner as a contract. *Johnson v. Johnson,* 37 S.W.3d 892, 896 (Tenn. 2001); *Pylant v. Spivey*, 174 S.W.3d at 151.

The proper interpretation of a contract is a matter of law, and the trial court's interpretation is accordingly not entitled to a presumption of correctness on appeal. Tenn. R. Civ. P. 13(d); *Doe v. HCA Health Services of Tennessee,* 46 S.W.3d 191 (Tenn. 2001). Thus, this court must review the MDA ourselves and we must make our own determination regarding its meaning and its legal import. *Pylant v. Spivey*, 174 S.W.3d at 151; *Hillsboro Plaza Enterprises. v. Moon,* 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions, and where the parties have reduced their agreement to writing, their intentions are reflected in the contract itself. *Id.*; *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999). "The intent of the parties is presumed to be that specifically expressed in the body of the contract . . . ." *Planters Gin Co.*, 78 S.W.3d at 890. Therefore, the court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano*, 995 S.W.2d at 95; *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975).

Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes, *Planters Gin Co.*, 78 S.W.3d at 890, and it is the court's duty to interpret it and enforce it as written, *Koella v. McHargue*, 976 S.W.2d 658, 661 (Tenn. Ct. App. 1998) (citing *Book-Mart of Florida, Inc. v. National Book Warehouse, Inc.*, 917 S.W.2d 691 (Tenn. Ct. App. App. 1995)). The court may not consider extraneous evidence that would alter, contradict or vary the terms of a clear and unambiguous written agreement. *Book-Mart of Florida, Inc. v. National Book Warehouse, Inc.*, 917 S.W.2d at 694 (citing *Faithful v. Gardner,* 799 S.W.2d 232, 235 (Tenn. Ct. App. 1990)).

### III. TYPES OF SPOUSAL SUPPORT AT ISSUE

Tennessee Code Annotated § 36-5-121 establishes the types of alimony that a court is authorized to award and provides definitions describing the characteristics of the different types of spousal support. These include alimony *in futuro*, alimony *in solido*, rehabilitative alimony and transitional alimony. For the purposes of this appeal, only alimony *in solido* and alimony *in futuro* are relevant. Alimony *in solido* is defined in Tenn. Code Ann. § 36-5-121(h) as follows:

> (1) Alimony *in solido*, also known as lump sum alimony, is a form of long term support, the total amount of which is calculable on the date the decree is entered but which is not designated as transitional alimony. Alimony *in solido* may be paid in installments; provided, that the payments are ordered over a definite period of time and the sum of the alimony to be paid is ascertainable when awarded. . . .
> (2) A final award of alimony *in solido* is not modifiable, except by agreement of the parties only.
> (3) Alimony *in solido* is not terminable upon the death or remarriage of the recipient or the payor.

The parties agree that the total amount of support provided for by the Agreed Interim Order ($18,000) was calculable on the date the order was entered and, thus, that the interim support provision meets the definition of alimony *in solido*. Accordingly, if the support provision in the Agreed Interim Order is the governing document, Husband's estate would indisputably be liable for the remainder of three full years of support, because "[a]limony *in solido* is not terminable upon the death or remarriage of the recipient or the payor." Tenn. Code Ann. § 36-5-121(h)(3).

On the other hand, the executrix asserts that MDA incorporated into the final order is the governing document. She contends that the support provision in the MDA does not meet the definition of alimony *in solido*, but, instead, is a classic example of an award of alimony *in futuro*. Alimony *in futuro* is described in Tenn. Code Ann. § 36-5-121(f) as follows:

> (1) Alimony *in futuro*, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. . . .
> (2) . . .
> (3) An award for alimony *in futuro* shall terminate automatically and unconditionally upon the death or remarriage of the recipient. The recipient

shall notify the obligor immediately upon the recipient's remarriage. Failure of the recipient to timely give notice of the remarriage shall allow the obligor to recover all amounts paid as alimony *in futuro* to the recipient after the recipient's marriage. Alimony *in futuro* shall also terminate upon the death of the payor, unless otherwise specifically stated.

The issue in this appeal is whether the husband's support obligation ended with his death or survived it. The answer to that question lies in the type of alimony awarded. The parties agree that the Agreed Interim Order includes support payments that are appropriately characterized as alimony *in solido*. Consequently, our first task is to determine whether the MDA establishes alimony *in futuro* or *alimony in solido*.

## IV. TYPE OF ALIMONY IN MDA

As set out earlier, the two types of alimony are defined by statute. Alimony *in solido* is for a specific sum of money, which is ascertainable when awarded, even if it is ordered to be paid in installments. Tenn. Code Ann. § 36-5-121(h)(1). In contrast, the total amount payable under an award of alimony *in futuro* cannot be accurately calculated, because the periodic payments are subject to uncertain contingencies such as the remarriage of the recipient or the death of either the recipient or the payor. Tenn. Code Ann. § 36-5-121(f)(3).

The Tennessee Supreme Court has explained the difference between the two types of alimony, *in solido* and *in futuro*, stating:

> Whether alimony is *in futuro* or *in solido* is determined by either the definiteness or indefiniteness of the sum of alimony ordered to be paid at the time of the award. *McKee v. McKee*, 655 S.W.2d 164, 165 (Tenn. App. 1983). Alimony *in solido* is an award of a definite sum of alimony. *Spalding v. Spalding*, 597 S.W.2d 739, 741 (Tenn.App.1980). Alimony *in solido* may be paid in installments provided the payments are ordered over a definite period of time and the **sum of the alimony to be paid is ascertainable when awarded**. *Id*. Alimony *in futuro*, however, lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid. *McKee*, 655 S.W.2d at 165–66 (holding alimony was *in futuro* where husband was ordered to pay the mortgage note until either the son turned twenty-two or the house was sold). It is therefore clear that the duration of an award of alimony *in futuro* may be affected by contingencies agreed upon by the parties or imposed by courts.

The continued payment of alimony in the case now before us was

-7-

subject to three contingencies: remarriage, death, or the passage of March 1, 1996. These contingencies affected the duration of the alimony. Accordingly, **the sum of the alimony payable to Mrs. Waddey was not determinable when the alimony was awarded**. . . . The award of alimony *in solido* must be ascertainable **when ordered**, not years later when a contingency terminates the award.

*Waddey v. Waddey*, 6 S.W.3d 230, 232-33 (Tenn. 1999) (emphasis added). *See also Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn. 2001) (relying upon *Waddey* for definitions of the two kinds of alimony).

Thus, to determine the type of alimony created, courts must look at the award of alimony at the time the award is made and determine if the sum of the alimony to be paid was definite and ascertainable at that time. In the case before us, the MDA did not specifically name the kind of alimony provided for therein. The support provision stated only the following:

The Husband will pay to the wife the sum of $500 per month. This alimony shall continue monthly unless the wife shall remarry and in that event then the alimony payments shall stop.

A fair reading of this language leads to the conclusion that the alimony described therein does not meet the definition of alimony *in solido*. It is not "an award of a definite sum of alimony." *Waddey*, 6 S.W.3d at 232. While the MDA provides for monthly payments, those payments are not "ordered over a definite period of time," and the "sum of the alimony to be paid" is not "ascertainable when awarded." Tenn. Code Ann. § 36-5-121(h)(1). Because the MDA's spousal support provision did not set a duration of the monthly obligation, the amount of support ordered was not calculable at the time the decree was entered. To constitute alimony *in solido, "*the sum of the alimony to be paid [must be] ascertainable when awarded." *Waddey*, 6 S.W.3d at 233.

Further, the MDA stated that the alimony obligation would terminate upon Wife's remarriage. Thus, the alimony created in the MDA "lacks sum-certainty due to contingencies affecting the total amount of alimony to be paid." *Waddey*, 6 S.W.3d at 232. That circumstance is the hallmark of alimony *in futuro*.

Wife argues that the inclusion of the remarriage provision in the MDA did not

"change"[1] the nature of Husband's support obligation from alimony *in solido* to alimony *in futuro*. She cites the case of *Grissom v. Grissom*, 15 S.W.3d 474 (Tenn. Ct. App. 1999) in

support of that proposition. The parties in that case, as in the case at bar, included an alimony provision in an MDA that was incorporated into a divorce decree. That provision stated:

> Husband shall pay the Wife as alimony in solido the sum of $221,000.00, which alimony in solido shall be payable $425 per week for ten (10) years, or 520 consecutive weeks, on Fridays of each week, beginning the first Friday after the Final Judgment of Divorce is entered, however, the alimony in solido monthly payments shall terminate upon the Wife's death.

*Grissom*, 15 S.W.3d at 474.

In *Grissom*, the wife remarried within one year of the divorce, and the husband filed a petition to modify his support obligation. He argued that the wife's remarriage automatically terminated his support obligation, in reliance upon an earlier version of Tenn. Code Ann. § 36-5-121(f), which, as we have seen, provides for automatic termination of alimony *in futuro* upon the death or remarriage of the recipient.[2] Thus, the husband's argument depended on his assertion that the MDA's support provision created alimony *in futuro*.

This court noted that the statutory section the husband was relying upon only applied to alimony *in futuro*, and we found that the parties intended an award of alimony *in solido*. We noted that the MDA specifically designated the award as alimony *in solido*, and that it set out a total sum to be paid, the weekly amount of the installment payments, and the duration of the award. The appellate court found significant that the parties had repeatedly characterized the alimony as *in solido* and held that the termination upon death contingency did not defeat the nature of the alimony award as *in solido* as part of an agreed-upon MDA. We also concluded that "the fact that payments would terminate upon the wife's death does

---

[1]Wife uses "change" because the Agreed Interim Order's support provision was for alimony *in solido*.

[2]At the time that *Grissom v. Grissom* was decided, spousal support and child support were both governed by a single statute, Tenn. Code Ann. § 36-5-101. That statute became extremely long and unwieldy over time, and our legislature decided in 2005 to divide the one statute into two. Child support continued to be governed by Tenn. Code Ann. § 36-5-101, while alimony became the subject of a newly numbered statute, Tenn. Code Ann. § 36-5-121 [2005 Acts, ch. 287 § 2]. However, the basic distinctions between alimony *in solido* and alimony *in futuro* were not changed by the statutory reorganization.

not render the amount indefinite." *Grissom*, 15 S.W.3d at 476.

There are significant differences in the support provision in *Grissom* and the one in the MDA in the case before us. The total amount of the alimony award was specifically stated in the *Grissom* MDA. The duration of the weekly installments was definite, ten years, and the sum of those payments totaled the amount awarded as alimony *in solido*. In the *Grissom* MDA, the parties made three specific references to the agreed-upon support as alimony *in solido*. The MDA in the case before us includes none of those indications of intent. The MDA herein does not state a total amount to be paid. It recites a monthly obligation, but does not refer to the duration of that obligation, so there is no way to calculate the total amount to be paid. Nor does the MDA refer to the Agreed Interim Order or state that the parties intend the award to be one type of alimony or another.

We acknowledge that *Grissom* stands for the proposition that a termination upon remarriage provision in an MDA is not necessarily inconsistent with an award of alimony *in solido*. We simply do not find that principle relevant to the case before us. In *Schmidt v. Schmidt*, 2005 WL 2240960 (Tenn. Ct. App. Sept. 15, 2005), this court examined *Grissom* and a few other decisions, including *Waddey*. We concluded that in those cases, the ultimate decision was consistent with the characterization of the alimony in the divorce decree, *i.e.,* alimony *in solido* or alimony *in futuro*. *Id*., at *6.

We agree that where there is an MDA, the intent of the parties as expressed in their negotiated agreement is generally the determinative factor. As explained above, in all contract interpretations, our purpose is to ascertain and give effect to the parties' intentions. Those intentions are reflected in the written contract itself. It is the court's responsibility to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. Where, as here, the parties did not expressly state any intention that the alimony be *in futuro* or *in solido*, we must look to the language actually used and apply the test established by statute and by the Tennessee Supreme Court, as set out in Tenn. Code Ann. §§ 36-5-121(h) and 36-5-121(f) and in *Waddey v. Waddey*.

There are no indices in the MDA before us that the parties intended that the award be *alimony in solido* or be anything other than what the language they chose actually states. That language clearly includes an indefinite duration and a contingency that makes calculation of the total amount awarded impossible. Such an award is alimony *in futuro*.

We conclude that the support provision in the MDA constitutes an award of alimony *in futuro*. Since we have determined that the Agreed Interim Order and the MDA incorporated into the final order provide for different types of alimony, we must decide which of the orders, either or both, establishes the spousal support obligation of Husband

Wife contends that the parties intended that the three-year provision found in the Agreed Interim Order be included in the MDA, but that it was omitted due to a drafting error.[3]  If the Agreed Interim Order is considered to have been incorporated into the final order and MDA, then the MDA would include a provision fixing the duration of the alimony payments.  Wife argues that the Agreed Interim Order provides a way of ascertaining the total amount of the alimony obligation, thus making the *Grissom* argument more relevant and persuasive.

The trial court reached the conclusion that the parties had intended that the three year provision be included or incorporated into the MDA, but that it was inadvertently left out.  The court stated that it based its determination largely on the testimony of Wife's attorney.  Wife asks us to affirm the trial court, invoking the well-known rule that in the absence of a transcript of the evidence or a statement of the evidence, the trial court's findings of facts are conclusively presumed to be supported by the evidence and to be correct.  *Fayne v. Vincent*, 301 S.W.3d 162, 169-70 (Tenn. 2009); *Word v. Word,* 937 S.W.2d 931, 932 (Tenn. Ct. App. 1996); *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992); *Gotten v. Gotten*, 748 S.W.2d 430, 432 (Tenn. Ct. App. 1987).

That maxim, however, only applies where there is a factual question involved, *i.e.*, where testimony is relevant to the issues.  However, trial courts are not entitled to consider any evidence as to what the parties to a contract intended when the contract is clear and unambiguous. *Planters Gin Co.*, 78 S.W.3d at 890.  Courts may not consider extraneous evidence that would alter, contradict or vary the terms of such a written agreement.

The case of *Brandon v. Brandon,* 135 S.W.2d 929 (Tenn. 1940) involved a factual situation similar to the one before us, and it illustrates the principle that extraneous evidence must be excluded when a judgment is unambiguous.  In that case, the trial court granted the wife a divorce and awarded her monthly alimony.  The husband died sixteen years later, bringing into play the common law rule (which had apparently not yet been enacted into statute) that a husband's liability for the support of his wife necessarily ends with his death.  The wife contended that the husband's estate was obligated to continue paying her alimony because her husband had told her that she would receive alimony for as long as she lived.

---

[3]If there was, in fact, a drafting error, there were other means at Wife's disposal to correct it, such as a Tenn. R. Civ. P. 60.02(1) motion for relief from a final judgment for "mistake, inadvertence,  surprise or excusable neglect."  The one year time limitation for relief under Rule  60.02(1) had passed by the time of Husband's death, but if Wife's attorney had wished, he could have tried to correct the purported error before it became evident that it would prove detrimental to Wife's entitlement to continuing support.

The trial court excluded her testimony, and our Supreme Court affirmed, stating that "[t]he decree entered by the court must control and is not subject to alteration or change by prior statements of the parties." *Brandon v. Brandon,* 135 S.W.2d at 930.

The support provision in the MDA before us is a brief and straightforward recitation of an obligation agreed to by both the parties, as evidenced by their signatures: "The Husband will pay to the wife the sum of $500 per month. This alimony shall continue monthly unless the wife shall remarry and in that event then the alimony payments shall stop." We do not find any ambiguity in that provision. It denominates a specific amount of monthly support as an alimony obligation, and it sets out a possible contingency, the occurrence of which would cause the obligation to cease. To read into the MDA the terms of the Agreed Interim Order or the three-year provision included in it would be to vary or alter the clear language of the support provision of the MDA.

Because the MDA's support provision is unambiguous, there was no basis for the trial court to admit extraneous testimony to determine the parties' intentions. Thus, the trial court erred in allowing Wife's attorney to testify to an intent that varies markedly from the actual provisions that are clearly set out in the MDA.

Husband's executrix also argues that the Agreed Interim Order is not relevant to our inquiry into the nature of the support obligation at issue because it was just a preliminary or *pendente lite* order. She contends that the interim order was superseded by the Final Decree of Divorce (and the MDA incorporated into that Decree) which fully and conclusively determined those rights. In a case involving a question of child support, this court discussed the difference between an interim order and a final order:

> An interim order is one that adjudicates an issue preliminarily; while a final order fully and completely defines the parties' rights with regard to the issue, leaving nothing else for the trial court to do. Until a judgment becomes final, it remains within the trial court's control and may be modified any time prior to the entry of a final judgment.

*State ex rel McAllister v. Goode,* 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)(citing *Stidham v. Fickle Heirs*, 643 S.W. 2d 324, 328 (Tenn. 1982)). *See also Hoalcraft v. Smithson,* 19 S.W.2d 822, 827 (Tenn. Ct. App. 1999).

We agree. The Agreed Interim Order was simply that, an interim order. The support obligation therein did not survive the entry of a final order incorporating the final support

obligation as set out in the MDA. The MDA and final order made no reference to the support provision of the Agreed Interim Order. The parties did not include language incorporating the Agreed Interim Order or language establishing a specific term for the alimony obligation. Husband's post-final-judgment support obligation was the obligation set out in the MDA.

## VI. Conclusion

The judgment of the trial court is reversed. We remand this case to the Probate Division of the General Sessions Court of Franklin County for any further proceedings necessary. Tax the costs on appeal to the appellee, Vicki Lee Steil.

_____
PATRICIA J. COTTRELL, JUDGE