**APCO AMUSEMENT COMPANY, INC., Plaintiff-Appellant,**

**v.**

**WILKINS FAMILY RESTAURANTS OF AMERICA, INC., and Dan W. Wilkins, Defendants-Appellees.**

Court of Appeals of Tennessee, Eastern Section.

Feb. 16, 1984.

Permission to Appeal Denied by Supreme Court June 11, 1984.

Harry Berke, of Berke, Berke & Berke, Chattanooga, for plaintiff-appellant.

John K. Morgan, of Morgan & Garner, Chattanooga, for defendants-appellees.

## OPINION

SANDERS, Judge.

This appeal is the outgrowth of the breach of two separate contracts between the parties.

The Plaintiff-Appellant, APCO Amusement Company, Inc., sued the Defendants-Appellees, Wilkins Family Restaurants of America, Inc., and Dan W. Wilkins, for the breach of a contract which the parties entered into on December 15, 1978. The Plaintiff is engaged in the coin-operated amusement machine business in Chattanooga and Hamilton County. The Defendant is engaged in the restaurant business in the same area. In December, 1978, the parties entered into a lease agreement for a period of three years wherein the Defendant subleased to the Plaintiff a portion of the building in Dayton Plaza Shopping Center, in which it operated its restaurant, for the Defendant to place a number of coin-operated machines. Due to lack of business the Defendant closed the restaurant on December 24, 1980. However, the portion of the building in which the coin-operated machines were located was not permanently closed until April, 1981.

In the meantime there were extensive negotiations between the parties in connection with the parties' entering into a similar agreement for the Plaintiff to occupy a portion of the space in which the Defendant was planning to operate a new restaurant at 5615 Lee Highway. On February 13, 1981, the parties signed a document stated to be a "letter of intent" setting forth certain commitments and obligations of the respective parties in connection with sharing the space on Lee Highway.

In APCO's original complaint it is alleged the Defendants breached the contract by closing the place of business before the expiration of its lease, and sought damages therefor.

The Defendants answered, denying liability. They also filed a counterclaim alleging the Plaintiff had breached the contract (letter of intent) dated February 13, 1981. The Counterplaintiff, Wilkins, alleged it had ex-

pended some $15,000 remodeling the Lee Highway premises for the use of APCO but APCO had failed to perform its portion of the contract and had refused to occupy the premises.

Upon the trial of the case the Defendants did not deny they had closed the restaurant in Dayton Plaza before the termination of the lease but insisted they had spent some $15,000 remodeling the Lee Highway property and the Plaintiff had breached its contract and was liable for damages in that amount.

APCO, however, insisted there was no contract between the parties in connection with the Lee Highway property; the "letter of intent" was only what it purported to be; it was not a contract and did not rise to the dignity of a contract.

Upon the trial of the case the chancellor found the Defendants had breached the original contract and fixed the Plaintiff's damages at $15,286.10. In his determination of the counterclaim the court found the letter of intent constituted a contract between the parties. He found the Plaintiff had breached the contract and the Defendants and Counter Plaintiffs were entitled to recover the sum of $14,132 which they had expended in remodeling the building for Plaintiff's occupancy. This amount was set off against the Plaintiff's recovery, allowing the Plaintiff a net judgment of $1,822.10.

There has been no appeal from the judgment for the Plaintiff against the Defendant. However, the Plaintiff has appealed from the judgment against it on the counterclaim. On appeal the Plaintiff has presented six issues for review. Its first issue is, "Did the chancellor err in holding that the letter of intent was a final, binding agreement rather than a step toward finalizing an agreement."

The letter of intent which was signed by both the Plaintiff and the Defendant is as follows:

"This is a letter of intent between Dan Wilkens and APCO Amusement Company, Inc. to jointly set up an amusement center at *5615 Lee Highway, Chattanooga, Tennessee.*

"Mr. Wilkins agrees to furnish approximately 1400 square feet of floor space at the above address and agrees to do the following things:

"A. Remodel the interior and furnish electrical outlets to the specifications of APCO.

"B. Install exterior door and two windows as agreed upon by Dan Wilkins and APCO.

"C. Dan Wilkins will furnish all utilities.

"D. Dan Wilkins will hire and provide supervision for the employees for the amusement center; however, the employees must meet with the approval of APCO. Also, the attire of the employees must conform to the standard set by APCO with respect to the trademark and operation.

"E. Dan Wilkins will pay 50% of a sign selected by APCO, with the understanding that at the end of the lease agreement of said premises or termination of the business, whichever occurs first, APCO will reimburse Dan Wilkins for his half of the cost less depreciation and Dan Wilkins agrees that the sign then will become the property of APCO.

"In return for the above services APCO Amusement Company, Inc. will do the following:

"A. Furnish the use of all amusement machines, electronic devices and any other amusement equipment which they deem necessary.

"B. APCO will service, maintain and keep in good repair, at their own expense all of the amusement machines, electronic devices and electronic equipment which they own and furnish to the center.

"C. APCO will permit the use of their trademark name for the amusement center and their trademark sign.

"D. APCO will pay up to $1500.00 toward the installation of two toilets in Dan Wilkins leasehold without any ob-

ligation for remuneration by Dan Wilkins.

"Further, it is agreed that APCO will retain 5% of the gross receipts for advertising and promotion at their discretion and the balance of the gross receipts from the amusement machines will be split on a 50/50 basis with Dan Wilkins.

"APCO will place an order for the required machines upon acceptance of this letter by both parties.

"This letter of intent is hereby accepted this 16th day of February, 1981 by:"

Shortly after the letter was signed by the parties Wilkins hired a general contractor, John Baggett, who began the remodeling work contemplated by the document. An invoice from Baggett's Construction Company shows that, as of April 1, 1981, Wilkins had paid Baggett $14,132 for work performed and purchases made in the areas of demolition, electrical, brick work, sheet rock, sprinkler system, toilets, partitions, store front, and doors. The invoice further indicates that work remained to be completed on the floors and ceiling and in the electrical area.

It appears that, while the remodeling work was in process, APCO purchased certain pieces of equipment intended to be used in the new game room, but proceeded no further with the venture.

At trial APCO denied liability, contending the letter was not a final, binding agreement between the parties and therefore was not capable of being breached. It also questioned whether or not the $14,132 worth of work actually was performed by Baggett or was paid for by Wilkins.

■ "Broadly speaking, preliminary negotiations as to terms of an agreement do not constitute a contract, although this does not preclude the formation of a binding contract during the negotiations." 17 Am.Jur.2d *Contracts* § 25 (1964). In this regard, "[i]t is well settled that a binding contract may be entered into through the medium of correspondence by letter or telegraph." *Neilson & Kittle Canning Co. v. F.G. Lowe & Co.*, 149 Tenn. 561, 564, 260 S.W. 142 (1924). Therefore, merely because the document signed by the parties was expressly designated to be a "letter of intent" does not preclude it from constituting a valid contract.

■ In determining whether or not the letter should be construed as a binding contract, we must keep in mind that

"[t]he primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to designate it. But the existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances."

17 Am.Jur.2d *Contracts* § 1 (1964).

■ This same approach, examining the conduct of the parties, was adopted by this court in the case of *Bailey v. Brister*, 49 Tenn.App. 191, 353 S.W.2d 564 (1961). In determining whether certain correspondence, in the form of letters sent between the parties, constituted a contract or was merely a part of the negotiations leading to a potential contract, we stated that "[t]he practical interpretation of a contract by the parties thereto is entitled to great, if not controlling influence, and will be adopted by the courts." *Id.* at 568. The court explained this rule of interpretation, quoting from Williston on Contracts, § 623, as follows: " ' "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only acts but the declarations of the parties may be considered." ' " *Bailey*, 353 S.W.2d at 568. In the present case, reviewing the conduct of the parties, we believe the parties acted upon the letter in such a way as to suggest that they believed a binding agreement had been reached. As the chancellor noted,

both parties proceeded with fulfilling obligations set forth in the document—while the Counterplaintiffs and their agents were remodeling the building which was to house the amusement center, APCO purchased certain new games for the center.

■ The letter of intent itself is worded much like a contract. The instrument speaks through words such as "agrees," "acceptance," and "accepts." The letter has been dated and signed by both parties, thereby suggesting consent on their parts to be bound by its terms. Further, on the face of the instrument, both parties promised to do or be responsible for certain things, indicating a mutuality of obligation. In addition, and perhaps most significantly, the method and rate of compensation, in the form of dividing profits at a specified percentage, are spelled out particularly in the letter.

The Appellant argues in its brief that several important provisions were omitted from the letter of intent, including such matters as the store hours, the tax and insurance responsibility, and the contract duration. On the basis of such omissions, the Appellant would have us declare the letter of intent to be so indefinite as to be unenforceable.

"The determination that an agreement is sufficiently definite is favored. Therefore, the courts will, if possible so construe the agreement as to carry into effect the reasonable intention of the parties, if that can be ascertained. The law leans against the destruction of contracts for uncertainty, particularly where one of the parties has performed his part of the contract." 17 Am.Jur.2d *Contracts* § 75 (1964).

■ We do not believe the omitted provisions mentioned above were essential to the formation of the contract in question. In particular, the duration of contracts need not be specified. "An agreement which contains no express provision as to its duration may be construed as being perpetual or terminable at will." 17 Am.Jur.2d *Contracts* § 80 (1964). *See generally First Flight Associates, Inc. v. Pro-fessional Golf Co.,* 527 F.2d 931 (6th Cir. 1975) (where the court, construing Tennessee law, determined that contracts silent on the time of termination are generally terminable at will by either party with reasonable notice).

■ Finally, we point out that APCO, the party attempting to deny the document's effect, prepared and worded the letter of intent. It chose the terms, listed the parties' obligations, and provided places for signatures. To allow it now to come into court and to have the written instrument declared invalid would run counter to the well-established rule of contract construction that doubt and ambiguity in a contract must be resolved against the party preparing it. *See Boatland, Inc. v. Brunswick Corp.,* 558 F.2d 818 (6th Cir.1977); *Hanover Insurance Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590 (1968); *Fuller v. Orkin Exterminating Co., Inc.,* 545 S.W.2d 103 (Tenn.App.1975); *Neubert v. Messer,* 15 Tenn.App. 210 (1932). Reviewing all of the facts and circumstances, we do not believe the chancellor erred in holding that the letter of intent constituted a final, binding agreement.

The Appellant's second issue is, "Did the chancellor err in holding that the letter of intent amounted to a partnership agreement."

■ We find the chancellor did not hold the letter of intent constituted a partnership, nor was such conclusion the basis for holding APCO was liable under the contract. Therefore, this court need not determine whether the letter actually created a partnership. True, the chancellor, after determining the document in question created a binding agreement, did state that "[t]hough the letter itself does not have any specific terms, this letter and nothing more would *probably* be construed to have created a partnership between the parties." (Emphasis ours.) Since this dictum, however, had no connection with the action of the court in assessing liability upon APCO, we conclude that any possible error in such dictum was harmless.

Appellant's third issue is, "Did the chancellor err in holding that Wilkins, a Counterplaintiff, carried the burden of proof in establishing that he paid $14,132.00 to Baggett."

Both the Counterplaintiff, Dan Wilkins, and his general contractor, John Baggett, testified at trial that the former paid to the latter $14,132.00 for work that had been completed at the Lee Highway amusement center. An invoice from the Baggett Construction Company dated April 1, 1981, similarly indicated that Wilkins had paid that amount. Although no cash receipt was offered into evidence, the chancellor believed that the Counterplaintiff had in fact paid the $14,132.00 to Baggett. It must be remembered that it is the trial court's province alone to evaluate the credibility of witness testimony, and the reviewing court will not interfere with findings made by the trial court which hinged on such credibility unless the evidence is clearly otherwise. *Tennessee Valley Kaolin Corp. v. Perry*, 526 S.W.2d 488 (Tenn.App. 1975). *See also Bingham v. Dyersburg Fabrics Co., Inc.*, 567 S.W.2d 169 (Tenn. 1978); *Sisk v. Valley Forge Insurance Co.*, 640 S.W.2d 844 (Tenn.App.1982); *Browder v. Hite*, 602 S.W.2d 489 (Tenn.App.1980). We conclude the trial court did not err in believing that Wilkins did, in fact, pay the amount claimed.

Appellant's fourth issue is, "Did the chancellor err in holding that the Counterplaintiff Wilkins was justified in proceeding with renovation of the Lee Highway game room."

The chancellor, in awarding the setoff to the Counterplaintiff, apparently believed that Wilkins was justified in proceeding with the project despite the clause in the letter of intent which stated that it was to "[r]emodel the interior and furnish electrical outlets to the specifications of APCO." Although APCO never furnished the specifications, Wilkins testified on cross-examination at trial that "we [Wilkins and APCO representative(s)] agreed on the basic structure." As this testimony was not contested or contradicted by APCO's representatives, we believe the chancellor did not err in finding that Wilkins was justified in proceeding with the renovation work.

The fifth issue is, "Did the chancellor err in finding that the work done by Baggett, the general contractor, was completed and paid for on April 1, 1981, in light of Baggett's own testimony."

On cross-examination, John Baggett inexplicably testified that he began the remodeling work in question in early May of 1981 and completed part of it by the time the April 1, 1981 invoice was prepared. The Appellant would have this court believe that portion of the general contractor's testimony which indicated the work began in May and disbelieve that portion which indicated that certain completed work was invoiced on April 1 of the same year. The chancellor, however, based upon all of the evidence before him, apparently believed that Baggett was not mistaken about when the work was completed and invoiced (April 1), but rather was confused as to when the work was begun. We do not feel the chancellor erred in this belief, especially in light of Dan Wilkins' testimony on cross-examination that Baggett had started demolition (the initial stage of the remodeling) "shortly after the letter of intent" (February 16, 1981).

The sixth issue is, "Did the chancellor err in awarding a setoff in the amount of $14,132.00 to Dan Wilkins, a Counterplaintiff where it appears that Wilkins retained possession of toilets and a store front valued at $3284.00, items that were part of the $14,132.00 total."

The chancellor awarded a setoff to Dan Wilkins in the amount of $14,132.00. This sum represented the amount paid by Wilkins to his general contractor for work performed under the renovation project. From the invoice presented at trial it appears that Wilkins paid a total of $3,284.00 for toilets and a store front procured by Baggett, the contractor. At trial, Baggett testified that Wilkins has retained possession of these items. We believe it was error for the chancellor to allow Wilkins to

recover the cost of these items which remain in his possession.

We accordingly hold the decree of the chancellor should be modified to delete $3,284.00 from the judgment for the Counterplaintiff and allow a judgment of $10,848 and the judgment in favor of the Plaintiff should be increased to $5,106.10.

The decree of the chancellor, except as modified, is affirmed and the case is remanded for the entry of a decree in keeping with this opinion. The cost of this appeal is taxed to the Appellees.

PARROTT, P.J., and FRANKS, J., concur.