IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 14, 2018 Session

## ST. PAUL COMMUNITY LIMITED PARTNERSHIP v. ST. PAUL COMMUNITY CHURCH v. ST. PAUL COMMUNITY LIMITED PARTNERSHIP; ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-0918-I          Claudia Bonnyman, Chancellor**

_____

### No. M2017-01245-COA-R3-CV

_____

Declaratory judgment action in which lessee of real property on which it had constructed a retirement facility sought a declaration (1) of its right pursuant to the lease agreement to obtain a mortgage loan insured by the United States Department of Housing and Urban Development to finance repairs and improvements to the facility and (2) absent an express right, a declaration that what it asserted was a "settlement agreement" with the lessor gave it that right. After considering the parties' motions for summary judgment, the trial court granted the lessor's motion. Lessee appeals; we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J., joined.

W. Scott Sims, D. Gil Schuette, and William L. Harbison, Nashville, Tennessee, for the appellant, St. Paul Community Limited Partnership.

M. Taylor Harris, Nashville, Tennessee, for the appellee, St. Paul Community Church, John T. Rochford, and Rochford Realty & Construction Co.

#### OPINION

I.      FACTUAL AND PROCEDURAL HISTORY

In August 1988, Rochford Realty & Construction Company entered into an agreement with the Saint Paul Southern Methodist Church, predecessor in interest to St.

Paul Community Church ("the Church"),[1] to lease real property to construct and operate a retirement center; the lease was to run for 101 years. Rochford Realty thereupon constructed a retirement center named "St. Paul Senior Living Community" on the property. The lease was subsequently assigned to John T. Rochford, III, and by him to St. Paul Community Limited Partnership ("the Partnership").[2]

In 2013, the Partnership began seeking financing from the United States Department of Housing and Urban Development ("HUD") to assist with renovating and repairing the center. The form under which the Partnership was to apply for HUD financing was form 92070M, which granted HUD the right to purchase the property in the event of a default. The Church would have to agree to the requirement, and its board of elders was reluctant to agree to the provision. The Partnership thereupon gave the Church notice of its intention to file suit to have a court declare its rights under the lease if the Church failed to approve its ability to obtain HUD financing. The board of elders put the Partnership's proposal to pursue HUD financing to the church congregation for a vote, and on June 23, 2013, Jack Cope, a church elder and the person appointed by the Church to meet and confer with the Partnership concerning the financing, wrote the Partnership a letter ("the Cope Letter") advising of the results of the meeting.

Following receipt of the letter, the Partnership did not immediately seek HUD financing but entered into further negotiations with the Church to purchase the property on which the retirement center was built; these negotiations were unsuccessful and ended in May 2015. The Partnership then began to pursue HUD financing, and the Church again disputed the Partnership's right to do so.

On July 30, 2015, the Partnership filed this action against the Church seeking a declaratory judgment that (1) it had the right to obtain HUD financing under the original lease and (2) that the Cope Letter represented a valid and enforceable settlement agreement. The Church answered and moved to add Rochford Realty and Construction Co., Inc., and John T. Rochford as plaintiffs;[3] the court granted the motion. The Partnership was granted leave to amend its Complaint, adding HUD forms 2070 and 92070M as exhibits, clarifying HUD's requirements for the financing being sought, and specifically asserting causes of action for declaratory judgment, breach of settlement agreement, and breach of lease agreement. The Church answered the amended complaint

---

[1] An amendment to the lease recites that Saint Paul Southern Methodist Church of Nashville was the original Lessor; the record does not show when St. Paul Community Church became Lessor.

[2] John Rochford, III, was the General Partner of the Partnership; the record does not identify the limited partners.

[3] The motion asserted that Mr. Rochford and Rochford Realty were prior lessees and were "jointly obligated with Plaintiff for the covenants and agreements of the Lease and Lessee's duty of good faith and fair dealing, and for any violations of them."

and asserted a counterclaim, requesting that the Court enforce the Lease as written and hold the Partnership liable for its attorney's fees, costs, and expenses pursuant to paragraph 21 of the lease.

In due course, the Church moved for partial summary judgment as to the Partnership's claims;[4] likewise, the Partnership moved for summary judgment as to all of its claims and to dismiss the Church's counterclaim. At the hearing of the motions on September 30, the court orally partially granted the Church's motion, holding that the Partnership was not entitled to obtain HUD financing under the original terms of the lease; the court reserved, among other things, the issue of whether the Cope Letter constituted a valid and enforceable settlement agreement with the Partnership; this ruling was incorporated into an order entered October 25.

That issue was heard on November 18, and the trial court entered a Final Judgment, certified under Rule 54.02, on May 19, 2017, which incorporated the September 30 oral ruling and held that the Cope Letter did not form a contract; the court granted the Church summary judgment on the remainder of the Partnership's claims.[5] The Partnership appeals, raising one issue:

> Whether the trial court erred in granting summary judgment to defendant/appellee St. Paul Community Church ("Appellee") with respect to SPC, L.P.'s claims that Appellee is bound by a settlement agreement and lease amendment entered into by the parties in 2013, authorizing SPC, L.P. to obtain a mortgage loan insured by the United States Department of Housing and Urban Development to finance certain repairs and improvements to SPC, L.P.'s retirement facility on Appellee's property.[6]

## II.    STANDARD OF REVIEW

Our Supreme Court set out the standard for the trial court's consideration of motions for summary judgment, as well as our review of the trial court's disposition of the motion in *Rye v. Women's Care Cntr. of Memphis, MPLLC*:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

---

[4] The Church did not seek summary judgment on its counterclaims.

[5] The trial court reserved ruling on Defendant's counterclaim.

[6] While the Partnership does not specifically state as an issue that the trial court erred by not granting its Motion for Summary Judgment, it does argue that this Court should "remand this case with instructions to enter judgment as a matter of law in favor of [the Partnership] on its claims in this action."

3

and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

477 S.W.3d 235, 250 (Tenn. 2015).

"The determination of whether a contract has been formed is a question of law." *German v. Ford*, 300 S.W.3d 692, 701 (Tenn. Ct. App. 2009) (citing *Murray v. Tenn. Farmers Assurance Co.,* No. M2008-00115-COA-R3-CV, 2008 WL 3452410, at *2 (Tenn. Ct. App. Aug. 12, 2008)). Further, "the ascertainment of the parties' intentions relating to the contract are also questions of law" *id.* (citing *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 95 (Tenn. 1999); *Doe v. HCA Health Services of Tenn., Inc.,* 46 S.W.3d 191, 196 (Tenn. 2001)), and are afforded no presumption of correctness. *Id*. at 702 (citing *Angus v. Heritage Ins. Co.*, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000).

## III.  ANALYSIS

In its oral ruling on the parties' motions for summary judgment, after acknowledging that the parties agreed that there were no material facts in dispute, the court held:

> The Court grants the Church's motion for summary judgment because the Church's management committees and Church members did not, by their 2013 votes and actions, enter into a settlement agreement with the Business or other contract with the Business. But the 2013 votes and activities were in preparation to amending the lease. The Business did not rely on the Church's 2013 votes or activities because at the time of the summary judgment motion hearings in late 2016, the Business still had not applied for HUD financing. Because the parties did not reach an agreement after the Church's internal decisions, the Church is not required to accept HUD requirements and encumbrances on its acreage so that the Business will qualify for its financing services.

The Partnership does not contend that there are material facts precluding summary judgment or that the court's factual findings are not supported by the record; rather, it argues that

4

The undisputed facts in the record show that the parties entered into a valid and enforceable settlement agreement and Lease amendment in June of 2013, which expressly authorized SPC, L.P. to obtain HUD financing utilizing Form 92070M as an addendum to the Lease, and that Appellee reneged on that agreement when SPC, L.P. sought financing in 2015. Although the trial court concluded that the parties did not form a binding contract in 2013 for various reasons, SPC, L.P., respectfully submits that the trial court's ruling was based on an erroneous view of the facts and the requirements of the law concerning contract formation.

The dispositive issue in this appeal is whether the Cope Letter constitutes an enforceable contract. The letter states:

This letter will serve as confirmation of the vote taken by the St. Paul Community Church members this day, Sunday June 23, 2013, where there was an overwhelming majority approval by St. Paul Community Church affirming the rights approved in the 1988 lease with the St. Paul Senior Living Community and all amendments signed by the church in the following years, and also to include HUD financing and HUD-2070 as amended with HUD-92070M which would control if there is any conflict with the lease.

For the reasons stated herein, we agree that the letter does not bind the Church to assist the Partnership in the manner sought.

"[A]n enforceable contract must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011) (*quoting Doe v. HCA Health Svcs. Of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The question of whether a letter could constitute a contract was before this court in *APCO Amusement Co. v. Wilkins Family Restaurants of Am., Inc.*, a case in which the plaintiff, who was engaged in the amusement machine business, had subleased space from the defendant in a building in which the defendant operated a restaurant. 673 S.W.2d 523, 525 (Tenn. Ct. App. 1984). The defendant closed the restaurant and negotiated with the plaintiff for space in another location in which the defendant planned to open a new restaurant; the parties eventually signed a "letter of intent." *Id*. For reasons not stated in the opinion, the plaintiff refused to occupy the new location and sued the defendant, seeking damages for defendant's breach of the original lease by closing the restaurant before plaintiff's lease expired; the defendant counterclaimed for breach of the "letter of intent" and sought damages for the cost of remodeling the new premises. *Id*. at 525-26. Following a trial the court found that the defendant breached the original contract and awarded plaintiff $15,286.10 in damages; the court further held that the "letter of intent"

5

constituted a contract, which plaintiff breached, and awarded damages to defendant of $14,132. *Id*. at 526. Plaintiff appealed; among the several issues raised on appeal, this court affirmed the trial court's holding that the "letter of intent" constituted "a final, binding agreement." *Id*. at 528.

In reaching our decision, we set out the analysis to be used in resolving the issue:

In determining whether or not the letter should be construed as a binding contract, we must keep in mind that

"The primary test as to the actual character of a contract is the intention of the parties, to be gathered from the whole scope and effect of the language used, and mere verbal formulas, if inconsistent with the real intention, are to be disregarded. It does not matter by what name the parties chose to designate it. But the existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined in case of doubt not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances."

17 Am.Jur.2d *Contracts* § 1 (1964).

This same approach, examining the conduct of the parties, was adopted by this court in the case of *Bailey v. Brister,* 49 Tenn. App. 191, 353 S.W.2d 564 (1961). In determining whether certain correspondence, in the form of letters sent between the parties, constituted a contract or was merely a part of the negotiations leading to a potential contract, we stated that "[t]he practical interpretation of a contract by the parties thereto is entitled to great, if not controlling[,] influence, and will be adopted by the courts." *Id.* at 568. The court explained this rule of interpretation, quoting from Williston on Contracts, § 623, as follows: "The interpretation given by the parties themselves to the contract as shown by their acts will be adopted by the court, and to this end not only acts but the declarations of the parties may be considered." *Bailey,* 353 S.W.2d at 568.

*Id*. at 527. We held that "reviewing the conduct of the parties, . . . [they] acted upon the letter in such a way as to suggest that a binding agreement had been reached . . . [and that] both parties proceeded with fulfilling obligations set forth in the document." *Id*. at 527-28. As for as the language of the letter, the Court noted:

The letter of intent itself is worded much like a contract. The instrument speaks through words such as "agrees," "acceptance," and "accepts." The

6

letter has been dated and signed by both parties, thereby suggesting consent on their parts to be bound by its terms. Further, on the face of the instrument, both parties promised to do or be responsible for certain things, indicating a mutuality of obligation. In addition, and perhaps most significantly, the method and rate of compensation, in the form of dividing profits at a specified percentage, are spelled out particularly in the letter.

*Id.* at 528.

In the case before us, the first sentence of the letter states that it is intended to be "a confirmation of the vote" that the Church membership took; in this context, the term "confirmation" only advises that the vote was taken and the result of the vote. There is no language in the letter that the Church is accepting any offer or specific proposal from the Partnership or of the terms of any new amendment to the 1988 lease; neither is there stated any promise the Partnership is making or obligation it is undertaking in return for the Church allowing the Partnership to pursue HUD financing,[7] or that the Church is accepting the terms of the HUD financing.[8] The record does not show any other manifestation of what could be construed to be the Church's consent to be obligated to approve another amendment to the lease based on financing for which application had not yet been made. Consistent with *Bailey*, this "practical interpretation" of the letter is to be given "great, if not controlling influence." 353 S.W.2d at 568; *APCO*, 673 S.W.2d at 527.

Moreover, the Church's constitution vests the power to contract in the Church's elders. The constitution also requires that "[b]efore the Elders dispose of, pledge, assign, encumber, or sell any tangible or intangible property of the church of a fair market value equal to or exceeding $100,000, the active membership shall give its approval through a majority (2/3) vote." Therefore, the Church's constitution contemplates a process by which the congregation must consent to a contract pledging or selling the Church's property *before* the Elders enter into the contract.

There was no contract or proposed amendment before the congregation when it voted, only the threat of a declaratory judgment action if the Church failed to approve the Partnership's ability to pursue HUD funding. Given the stated purpose of the Cope Letter, i.e., to confirm the fact and result of the June 2013 congregational meeting, the terms of the letter, and the Church's process for entering into contracts concerning its real

---

[7] The absence of the Partnership's obligation indicates a lack of the "mutuality of obligation," as the *APCO* court mentioned. *Id.* at 528.

[8] This is particularly significant in light of the trial court's holding that the Partnership "concedes that in 2015 after the 2013 Church members' vote, [the Partnership] learned that HUD requirements would also include a significant reduction in rent that [the Partnership] could charge its residents reducing revenue to the Church by approximately Eighty-five Thousand Dollars ($85,000) each year."

7

property, we conclude that the elements necessary to establish a binding contract are not present; we affirm the trial court's holding that the Cope Letter did not form a binding contract and the grant of summary judgment to the Church.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
RICHARD H. DINKINS, JUDGE

8