IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2026 Session

## ACUTE CARE HOLDINGS, LLC v. HOUSTON COUNTY, TENNESSEE

**Appeal from the Chancery Court for Houston County**
**No. 2014-CV-434    Robert E. Lee Davies, Senior Judge**

---

### No. M2024-01734-COA-R3-CV

---

This appeal follows our remand in *Acute Care Holdings, LLC v. Houston Cnty.*, No. M2018-01534-COA-R3-CV, 2019 WL 2337434 (Tenn. Ct. App. June 3, 2019) (hereinafter "*Acute Care I*"). The dispute involves the alleged breach by Houston County of a Letter of Intent pertaining to the purchase of a hospital in Erin, Tennessee. On remand, the trial court ruled in favor of the plaintiff, Acute Care Holdings, LLC ("Acute Care"), by granting its motion for partial summary judgment on the basis that Houston County breached the Letter of Intent. Thereafter, the trial court entered an Agreed Final Judgment awarding Acute Care a judgment of $1,218,062.63 and prejudgment interest of $730,036.65. This appeal followed. Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and W. NEAL MCBRAYER, JJ., joined.

Samuel P. Funk and Michael R. O'Neill, Nashville, Tennessee, for the appellant, Houston County.

Robert E. Boston and Taylor J. Askew, Nashville, Tennessee, for the appellee, Acute Care Holdings, LLC.

### OPINION

#### FACTS AND PROCEDURAL HISTORY

The history of this case, as previously stated in *Acute Care I*, reads as follows:

By the fall of 2001, the only hospital in Houston County, Patient's Choice Medical Center ("PCMC"), was in financial distress and in danger of closing its doors. Although the hospital had just recently obtained certification as a

"Critical Access Medical Center," which would likely provide for a better financial future, but not in the immediate future, PCMC lacked the capital or revenue to continue operating long enough to benefit from the new certification. Because PCMC was Houston County's third largest employer and a critical provider of medical services to the community, in order to prevent the closure of the hospital, Houston County sought to purchase the hospital from PCMC and then lease it to a hospital management company.

Around the same time, Acute Care Holdings, LLC ("Acute Care"), which operated a nursing facility in Houston County, also considered buying PCMC but determined that it was not feasible to do so. Nevertheless, its inquiry into the matter ultimately resulted in the execution of a Letter of Intent among Houston County, Acute Care, and PCMC pursuant to which Houston County would endeavor to negotiate an asset purchase agreement with PCMC to purchase the hospital and its assets and then lease the hospital to Acute Care, which would manage the hospital.

The Letter of Intent, which was executed on February 29, 2012, established the conditions by which Acute Care agreed to loan funds to PCMC to sustain the hospital's operations while Houston County and PCMC negotiated an asset purchase agreement. In pertinent part, the Letter of Intent provided:

> As of March 1, 2012, [Acute Care] . . . and [PCMC] shall enter into an interim management agreement for the [PCMC] facility . . . wherein [Acute Care] agrees to assume operational authority and control of the Facility under [PCMC's] provider number and license, to the extent permitted by law, and to provide funding for certain improvements and operational expenses, ***to be reimbursed at a later date by [Houston County] to [Acute Care] if and when the Closing occurs***. [PCMC] shall execute one or more promissory notes . . . for all expenses paid by [Acute Care] for operation of the Facility in excess of the Facility's revenue during the interim management period, ***evidencing [PCMC's] obligation to repay such expenses in the event the closing does not occur***.

(Emphasis added).

The Letter of Intent further provided that once Houston County purchased the hospital, Houston County would lease the assets to Acute Care to operate and manage[.]

.      .      .

The Letter of Intent also provided a due diligence period whereby Acute Care would inspect PCMC's assets. The Letter of Intent also clarified the parties' obligations to one another when the Letter of Intent was canceled or expired:

> [Acute Care] shall have 30 days from the date of this Letter of Intent ("Due Diligence Period") to fully inspect the Assets and, at its discretion, proceed with, or cancel the transaction. If canceled, no party shall have any further obligations to the others, except for the repayment of any promissory note(s) signed by [PCMC] in favor of [Acute Care] for funds expended by [Acute Care] for payment of improvements and operating expenses during the interim management period. Unless [Acute Care], in its sole discretion, gives [PCMC] notice that it waives its rights to cancel the transaction, the transaction shall be deemed canceled at the end of the Inspection Period.

Based on the agreement, if Houston County closed on the purchase of the hospital within the agreed-upon deadline, Houston County would assume PCMC's obligations to Acute Care on the loans that kept the hospital in business. If, however, the purchase did not close in accordance with the Letter of Intent, Houston County would have no financial obligations to Acute Care.

Acting pursuant to the Letter of Intent, Acute Care periodically loaned PCMC the funds it needed to operate the hospital while Houston County and PCMC negotiated the asset purchase agreement. When Houston County and PCMC were unable to reach an agreement by the initial deadline, Acute Care, Houston County, and PCMC executed amendments to the Letter of Intent that extended the deadline to December 31, 2012, all the while Acute Care continued to financially support PCMC. As each loan was made, PCMC's president, Ray Shoemaker, executed promissory notes to memorialize its debt to Acute Care.

By November 25, 2012, Houston County still had not closed on the purchase of the hospital. Thus, Acute Care sent Houston County a new proposed Letter of Intent which provided that Acute Care would "continue to manage the Hospital pursuant to the existing interim management agreement . . . until the County acquires the Hospital, but in no event beyond January 10, 2013." It further provided that Houston County would execute a promissory note in Acute Care's favor to cover the cost of PCMC's November payroll. Houston County rejected the proposal.

- 3 -

Houston County did not close on the purchase of the hospital by the December 31 deadline; however, Houston County and PCMC executed a purchase agreement in March 2013, by which Houston County would not assume any of PCMC's liabilities. Additionally, instead of awarding the management contract to Acute Care, Houston County awarded the hospital management contract to an entity owned by the County's attorneys. Thereafter, Houston County refused to reimburse Acute Care for the money it expended to keep the hospital in business during negotiations.

On November 10, 2014, Acute Care filed a complaint for breach of contract and unjust enrichment in Houston County Chancery Court, alleging Houston County was liable to Acute Care for the more than $1.2 million Acute Care expended during the interim management period. In its answer, Houston County denied the allegations and asserted a number of affirmative defenses, including the failure of a condition precedent.

Houston County filed a motion for summary judgment on November 16, 2017, wherein it contended that the County was not obligated to reimburse Acute Care because it was undisputed the closing did not occur pursuant to the Letter of Intent; thus, Acute Care's only recourse was to seek reimbursement from PCMC or its president Ray Shoemaker. Houston County also sought dismissal of the claim for unjust enrichment because that claim only applied when the parties did not have an enforceable contract, and it was undisputed that the parties had an enforceable contract.

In its response to the motion for summary judgment, Acute Care agreed that the purchase of the hospital did not close pursuant to the Letter of Intent, which was a condition precedent to Houston County's obligation to perform. However, Acute Care argued that the non-occurrence of a condition precedent is excused when the defendant prevents the condition from occurring. Acute Care alleged that Houston County's failure to negotiate an asset purchase agreement pursuant to the Letter of Intent was calculated to avoid the County's obligations to Acute Care, and it asked the trial court for additional time to conduct discovery so it could present evidence supporting that allegation. The court granted the continuance, and after taking additional discovery, Acute Care filed a supplemental response to Houston County's motion for summary judgment.

First, Acute Care contended that PCMC and Houston County reached an agreement for the purchase of the hospital as early as September 2012, well before the December 31 deadline, but the Mayor of Houston County failed to sign the agreement. As evidence, Acute Care submitted a resolution

of the Houston County Board of Commissioners dated September 17, 2012, which acknowledged that the Commissioners reviewed Houston County's asset purchase agreement with PCMC and its management agreement with Acute Care and approved the agreements "in all particulars." The Commissioners then ordered the Mayor and County Clerk of Houston County "to execute, acknowledge, and deliver" the agreements on behalf of the County.

As further support, Acute Care submitted an email exchange, dated October 16 and 18, 2012, between Cindy Barnett, an attorney for Houston County, and a loan representative from the United States Department of Agriculture ("USDA"). The emails showed that Houston County had obtained a USDA loan to purchase the hospital and to reimburse Acute Care. In an email dated October 16, Ms. Barnett sent the USDA representative the asset purchase agreement, the management agreement, and the Commissioners' resolution and indicated that the parties had agreed on all material terms, and they were ready to close on the purchase of the hospital. Acute Care also submitted the meeting notes from the December 6, 2012 meeting of the Houston County Board of Commissioners wherein the Commissioners approved the management agreement with Acute Care and directed the Mayor to execute the agreement.

For its part, Houston County presented evidence to refute the claim that it had reached an agreement with PCMC before the December 31, 2012 deadline. Supporting its contention, Houston County submitted the asset purchase agreement approved by the Commissioners on September 17, 2012, and noted that the agreement was missing the purchase price. Houston County argued that the Commissioners had approved a "form" of an asset purchase agreement but not the agreement itself because Houston County and PCMC had not settled on the material terms and did not come to an agreement on the material terms until March 2013. Houston County also submitted emails between Ms. Barnett and PCMC representatives sent in October 2012, showing that PCMC was not satisfied with the Commissioner-approved asset purchase agreement.

After a hearing on June 11, 2018, the trial court summarily dismissed Acute Care's breach of contract claim . . . [and] granted Houston County's motion to summarily dismiss Acute Care's unjust enrichment claim, ruling that "a plaintiff cannot recover [on] an unjust enrichment claim where there is a valid contract, and it is undisputed that the [Letter of Intent] constituted a valid contract . . . ."

Acute Care appealed, arguing that the summary dismissal of its claims against the County was error. In that appeal, *Acute Care I*, we reversed the trial court's rulings and remanded the case to the trial court for further proceedings.[1]

Following remand and the taking of additional discovery, Acute Care filed its motion for partial summary judgment contending that the County breached the Letter of Intent by failing to close after all requisite contingencies were satisfied. After the County filed its response in opposition to the motion, the court heard arguments from the parties on March 7, 2024. In the order entered on March 26, 2024, the trial court granted the motion for partial summary judgment in favor of Acute Care, ruling in pertinent part:

> The undisputed facts are that on two separate occasions (September and October of 2012), the Houston County Board of Commissioners passed a resolution directing the County Mayor, George Clark, to "execute, acknowledge, and deliver" those agreements, which were approved in "all particulars." Acute Care also cites the Court to the emails of the County Attorney, Mrs. Barnett to the USDA loan representative in which she explains that the purchase price will be equal to the amount necessary to pay the liabilities on PCMC's balance sheet and that PCMC was not receiving any cash. Finally, Acute Care points out that the closing memorandum for the ultimate closing between the County and PCMC makes reference to the same resolution approved by the Board of Commissioners on September 17, 2012, authorizing the execution of the asset purchase agreement with PCMC and the management agreement with Acute Care. In other words, nothing changed from the original closing documents under the Letter of Intent with Acute Care after the expiration of the deadline of December 31, 2012, other than the substitution of an entity owned by the County's Attorney's for the management contract and the removal of the obligation to pay back the 1.2 million which Acute Care had loaned PCMC.

> Considering these facts, even in the light most favorable to Houston County, the Court concludes as a matter of law that Acute Care performed all of its obligations pursuant to the binding Letter of Intent; that all of the contingencies in the Letter of Intent were met; that the County Commissioners specifically and expressly authorized the County Mayor to execute the asset purchase agreement and management agreement prior to

---

[1] Chancellor David D. Wolfe of the Houston County Chancery Court presided over the case prior to the first appeal. Following remand, Senior Judge Robert E. Lee Davies presided over the case.

December 31, 2012; that the computation of the purchase price was agreed upon; and that the County Mayor's failure to follow the directives of the County Board of Commissioners resulted in a breach of the Letter of Intent by Houston County.

(footnote omitted).

Following the grant of partial summary judgment in favor of Acute Care, the parties entered an Agreed Final Judgment stipulating the amount of Acute Care's damages. In pertinent part, the final judgment reads: "The parties stipulate that under the Court's March 26, 2024 Order (which either party may appeal) Acute Care's damages for breach of contract amount to $1,218,062.23, plus interest[.]"

This, the second appeal, followed.

## ISSUES

Houston County presents two issues for our review:

1. Whether the trial court erred in construing the parties' contract in a manner that is contrary to: (a) this Court's prior decision in this case, (b) [Acute Care's] judicial admissions made in this case, (c) the plain language of the contract, and (d) the extrinsic evidence, including the testimony of [Acute Care's] own witnesses?

2. Whether the trial court erred in granting partial summary judgment in [Acute Care's] favor: (a) based on an erroneous construction of the parties' contract and (b) when material issues of disputed fact exist?

Acute Care presents one issue: "Whether the trial court correctly granted summary judgment in favor of Acute Care by concluding that Houston County breached the binding Letter of Intent when it failed to close on its purchase of a hospital after all contractual contingencies requiring the County to do so had been satisfied."

## STANDARD OF REVIEW

A trial court's decision regarding summary judgment is reviewed de novo. "We review de novo with no presumption of correctness a trial court's decision on a motion for summary judgment." *Thompson v. Memphis City Sch. Bd. of Educ.*, 395 S.W.3d 616, 622 (Tenn. 2012). When doing so, we must "view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor." *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). Summary judgment will be found "appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015) (citing Tenn. R. Civ. P. 56.04).

The burden to show that summary judgment is appropriate falls to the moving party. "The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008). The burden then shifts to the nonmoving party. "[A]t the summary judgment stage, '[t]he nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party.'" *TWB Architects, Inc. v. Braxton, LLC*, 578 S.W.3d 879, 889 (Tenn. 2019). To satisfy this burden, the nonmoving party must do "something more than simply show that there is some metaphysical doubt as to the material facts." *Rye*, 477 S.W.3d at 251 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**ANALYSIS**

I.

Houston County argues that the trial court erred in construing the Letter of Intent in a manner that is contrary to: (a) this Court's prior decision in this case, (b) Acute Care's judicial admissions in this case, (c) the plain language of the Letter of Intent,[2] and (d) the extrinsic evidence in the record.

A.

For its first argument, the County asserts that the trial court's ruling conflicted with a statement by this court in *Acute Care I*, which the County argues constitutes the law of the case. The quote from our prior decision reads:

> If the purchase of the hospital closed by the agreed-upon deadline, the county agreed to repay [Acute Care] for the amount loaned; however, **if the purchase of the hospital did not close by the deadline, the county was not obligated to repay the loans to the hospital**.

---

[2] The Letter of Intent, signed by Acute Care, Houston County, and PCMC, was a binding agreement, unlike some letters of intent. While Houston County would characterize the LOI as a "limited framework" for negotiating a contract, we have held that "merely because the document signed by the parties was expressly designated to be a 'letter of intent' does not preclude it from constituting a valid contract." *APCO Amusement Co., Inc. v. Wilkins Family Restaurants of Am., Inc.*, 673 S.W.2d 523, 527 (Tenn. Ct. App. 1984). Moreover, the parties stipulated that the LOI is a valid and enforceable contract.

*Id.* at *1 (emphasis added). Relying on the above quote, the County insists it cannot be held liable for breach of contract because the purchase of the hospital did not close by the deadline. The trial court disagreed with this conclusion, and we agree with the trial court.

The County's reliance on the quote from *Acute Care I* is misplaced because that ruling also held that "[u]nder Tennessee law, if Houston County prevented the [closing] from occurring, then Houston County was liable for breach." *Id.* at *5. As we noted in *Acute Care I*:

> [N]on-performance of [a] duty when performance is due is a breach, and that has the further effect of excusing the nonoccurrence of the condition itself, so that performance of the duty that was originally subject to its occurrence can become due in spite of its non-occurrence.

*Id.*

Resultingly, we find the County's law of the case argument unpersuasive.

## B.

Next, the County argues that the trial court erred in construing the contract in a manner that is contrary to Acute Care's judicial admissions in this case. The County relies on Acute Care's responses to the County's Statement of Undisputed Material Facts in the context of the County's motion for summary judgment prior to the first appeal.

The three responses at issue read:

> The LOI addressed which party would be obligated to pay for the amounts that [Acute Care] contends it paid on behalf of and for the benefit of the Hospital in the event that the closing under the terms of the LOI did not occur.

> Pursuant to the LOI, Houston County was obligated to reimburse [Acute Care] for funding for certain improvements and operational expenses only if and when the closing as defined in the LOI occurred.

> Pursuant to the LOI, [Acute Care] was to look to one or more of the promissory notes executed by PCMC for repayment of the amounts it contends it paid on behalf of and for the benefit of the Hospital in the event the closing did not occur.

We, however, find this argument unpersuasive for the same reason as the prior argument. As the trial court correctly ruled, the purchase of the hospital did not close prior to the deadline due to the County Mayor's failure to follow the directives of the County

- 9 -

Board of Commissioners directing him "to execute" the closing documents. Therefore, the County may not rely on the fact that the purchase did not close in its defense.

## C.

For its third argument, the County contends that the trial court erred in construing the contract in a manner that is contrary to the plain language of the contract. We agree with the trial court, finding that this argument fails for the same reasons as stated immediately above.

## D.

The County's fourth argument is that the trial court's ruling is contrary to the extrinsic evidence, citing Acute Care's course of conduct following the execution of the Letter of Intent. We discern no error in the trial court's ruling, finding that the extrinsic evidence argument fails for the same reasons as the County's foregoing contentions.

## II.

The County additionally contends that the trial court erred in granting partial summary judgment in Acute Care's favor based on an erroneous construction of the contract and when material issues of disputed fact exist.

We have sufficiently addressed the first part of this issue in the above section, and see no need to analyze further the issue of whether the grant of summary judgment was based on an erroneous construction of the contract. As for the second component of the stated issue, whether the trial court erred by ruling that the material facts were not disputed, we find no error with this holding.

We conclude, as did the trial court, that the material facts are not in dispute. As the trial court explained in its ruling, quoted above but repeated here to address the issue:

> The undisputed facts are that on two separate occasions (September and October of 2012), the Houston County Board of Commissioners passed a resolution directing the County Mayor, George Clark, to "execute, acknowledge, and deliver" those agreements, which were approved in "all particulars." Acute Care also cites the Court to the emails of the County Attorney, Mrs. Barnett to the USDA loan representative in which she explains that the purchase price will be equal to the amount necessary to pay the liabilities on PCMC's balance sheet and that PCMC was not receiving any cash. Finally, Acute Care points out that the closing memorandum for the ultimate closing between the County and PCMC makes reference to the same resolution approved by the Board of Commissioners on September 17,

2012, authorizing the execution of the asset purchase agreement with PCMC and the management agreement with Acute Care. In other words, nothing changed from the original closing documents under the Letter of Intent with Acute Care after the expiration of the deadline of December 31, 2012, other than the substitution of an entity owned by the County's Attorney's for the management contract and the removal of the obligation to pay back the 1.2 million which Acute Care had loaned PCMC.

Considering these facts, even in the light most favorable to Houston County, the Court concludes as a matter of law that Acute Care performed all of its obligations pursuant to the binding Letter of Intent; that all of the contingencies in the Letter of Intent were met; that the County Commissioners specifically and expressly authorized the County Mayor to execute the asset purchase agreement and management agreement prior to December 31, 2012; that the computation of the purchase price was agreed upon; and that the County Mayor's failure to follow the directives of the County Board of Commissioners resulted in a breach of the Letter of Intent by Houston County.

(footnote omitted).

The County's principal argument both in the trial court on remand and in this appeal is that it could not be held liable for breach of contract because the closing did not occur prior to the deadline. But the trial court correctly found this defense unfounded because the County itself was responsible for the purchase of the hospital not closing.

The trial court noted that the contract obligated the County to close on the purchase if "six specific contingencies" were met. And as the trial court correctly found, the undisputed facts showed that "all of the contingencies in the Letter of Intent were met." Further, on two occasions the Board of County Commissioners passed resolutions approving the purchase agreement "in all particulars" and directing the County Mayor to "execute, acknowledge, and deliver" the purchase agreement. While the County blames the seller, PCMC, for the failure to close on the purchase of the hospital by the deadline, the Chief Executive Officer (and owner) of PCMC,[3] testified that he thought the sale had closed, noting that he had authorized a representative to execute the closing documents on behalf of PCMC. Moreover, as the trial court noted, once all six contingencies were satisfied, the burden was on the County to close on the purchase of the hospital. And PCMC's consent to a specific contract was not a listed contingency in the Letter of Intent.

---

[3] Ray Shoemaker, the CEO of PCMC, was in prison at the time serving a sentence for Medicare fraud related to another hospital.

- 11 -

Further, the County did close on the purchase of the hospital, albeit not by the agreed-upon deadline in the contract.

Nevertheless, the County insists that material facts are in dispute because a purchase price for the hospital had not been agreed upon. We disagree. The undisputed proof, as established by the contemporaneous emails form the County's attorney, Cindy Barnett, to the United States Department of Agriculture, is that the purchase price will be equal to the amount necessary to pay the liabilities on the hospital's balance sheet and that the seller, PCMC, was not receiving any cash. Moreover, and as the trial court correctly noted, "nothing changed" between the expiration of the Letter of Intent and March 22, 2013, when the County finally executed the closing documents to purchase the hospital, except that (1) Acute Care was cut out of the Management Agreement and replaced by "an entity owned by the County's Attorneys" and (2) the County attempted to remove its "obligation to pay back the $1.2 million" that Acute Care had loaned the hospital to support its operations.

It was based on these and other undisputed facts that the trial court held that

Acute Care performed all of its obligations pursuant to the binding Letter of Intent; that all of the contingencies in the Letter of Intent were met; that the County Commissioners specifically and expressly authorized the County Mayor to execute the asset purchase agreement and management agreement prior to December 31, 2012; that the computation of the purchase price was agreed upon; and that the County Mayor's failure to follow the directives of the County Board of Commissioners resulted in a breach of the Letter of Intent by Houston County.

Thus, we affirm the trial court's finding that the material facts were not disputed. We further affirm that Acute Care established, as a matter of law, that the County breached the Letter of Intent and is therefore liable for damages and interest as set forth in the Agreed Final Judgment.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded for further proceedings consistent with this opinion. The costs of appeal are assessed against the appellant, Houston County.

_____
FRANK G. CLEMENT JR., C.J., M.S.